Frank S. CHIANELLI, Petitioner,

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent.

No. 01–3010.

United States Court of Appeals, Federal Circuit.

May 17, 2001.

Rehearing Denied June 12, 2001.

PER CURIAM.

Frank S. Chianelli petitions for review of the final decision of the Merit Systems Protection Board ("Board") dismissing for lack of jurisdiction his Individual Right of Action ("IRA") appeal filed pursuant to 5 U.S.C. § 1221 (1994). *Chianelli v. Envtl. Prot. Agency,* 86 M.S.P.R. 651 (2000). Because Mr. Chianelli did not make a disclosure that was protected under the Whistle-

blower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified in scattered sections of 5 U.S.C.) (1989) ("WPA"), we *affirm.*

BACKGROUND

From 1991 to 1999,[1] Mr. Chianelli worked for the United States Environmental Protection Agency ("agency") as an Environmental Protection Specialist in the agency's Region 8 headquarters in Denver, Colorado. Region 8 covers the states of Colorado, Montana, North Dakota, South Dakota, Utah and Wyoming. Mr. Chianelli, along with other agency employees, was responsible for assisting states and certain Native American tribes in the development of programs to protect groundwaters and endangered species. Throughout his tenure with the agency, Mr. Chianelli filed numerous complaints with various supervisors, unidentified "legislators," and other federal agencies regarding alleged improprieties by agency officials in Region 8.

In early 1995, Mr. Chianelli filed a complaint with the agency's Office of Inspector General ("OIG"), alleging that agency officials in Region 8 had improperly funded Utah's pesticides prevention program. Based on petitioner's complaint, the OIG audited the agency's oversight of the pesticides programs in Utah and South Dakota. The OIG's audit report, prepared in October of 1995, concluded that Region 8 in 1994 had "experienced some difficulty with the State of Utah's implementation of the Pesticide Programs." However, in light of significant improvements to Utah's program in 1995, the OIG concluded that further investigation into petitioner's allegations was unwarranted. Indeed, during the course of the audit Mr. Chianelli informed OIG auditors that in his opinion

1. Mr. Chianelli's employment with the agency terminated in January of 1999 for reasons unrelated to this appeal.

Utah's program had "advanced ... greatly" in 1995, and that the state's "performance appear[ed] to be much improved over 1994."

In the fall of 1996, Mr. Chianelli filed a complaint with the Office of Special Counsel ("OSC"), alleging that in retaliation for his whistleblowing activities, the agency had, *inter alia*, rejected his applications for twenty-five positions in Region 8 and falsely accused him of sexual harassment. In support of his complaint, he provided the OSC with memoranda in which he claimed to have made certain disclosures protected under the WPA. In the first memorandum, dated August 9, 1996, Mr. Chianelli criticized a request by North Dakota for $90,000 for certain "groundwater activities," and expressed his dissatisfaction with alleged delays in North Dakota's submission of a generic plan related to that state's pesticides prevention program. In the second memorandum, dated October 1, 1996, Mr. Chianelli alleged that several states within Region 8 had failed to develop acceptable plans for the treatment of pesticides in groundwater, and that the agency had expended "over 35 million dollars" on that project with "virtually nothing to show" for it.

On November 12, 1997, OSC informed Mr. Chianelli by letter that it had closed its investigation into his complaint, thereby clearing the way for him to file an individual right of action ("IRA") appeal with the Board. *See* 5 U.S.C. § 1214(a)(3). Counsel for Mr. Chianelli filed a timely IRA appeal after receiving the OSC's closure letter.

In a May 15, 1998, Initial Decision, the administrative judge (without holding the jurisdictional hearing requested by petitioner), found that Mr. Chianelli had not alleged facts which, if proven, would establish that he made disclosures protected under the terms of 5 U.S.C. § 2302(b)(8)

set forth below, and accordingly dismissed petitioner's IRA appeal for lack of jurisdiction. *Chianelli v. Envtl. Prot. Agency*, No. DE–1221–98–0173–W–1 (M.S.P.B. May 15, 1998) ("Initial Decision"). In that decision, the administrative judge criticized Mr. Chianelli and applied a clearly incorrect legal standard to determine the reasonableness of the petitioner's belief in the protected nature of his disclosures of alleged agency misconduct. For example, the administrative judge stated that:

> The [petitioner] incessantly lambasts anyone who has the temerity to disagree with his personal views as to the agency's environmental policies and programs. The [petitioner] also clearly has no comprehension that reasonable individuals can reasonably differ about agency policies.

*Id.*, slip op. at 3.

The administrative judge also questioned the motives underlying Mr. Chianelli's disclosures, and intimated that because (in his view) Mr. Chianelli was a "pure troublemaker," those disclosures could not fall within the scope of the WPA:

> Based on my review of the whole record, I also find that the [petitioner's] disclosures were clearly a smokescreen designed to protect himself against discipline for insolent, insubordinate conduct toward his supervisors, for alleged sexual harassment of female agency employees, and for general troublemaking. I would also find that the WPA was not intended to protect pure troublemakers like the [petitioner].

*Id.*, slip op. at 4 (internal citations omitted).

Mr. Chianelli appealed the Initial Decision to the full Board, arguing that the administrative judge erred in denying him a jurisdictional hearing. He also sought, on remand, the reassignment of his appeal

to a different administrative judge, arguing that the administrative judge was biased against him.

The Board granted Mr. Chianelli's petition for review, and held that petitioner had raised a "nonfrivolous allegation of Board jurisdiction warranting a jurisdictional hearing." *Chianelli v. Envtl. Prot. Agency,* 81 M.S.P.R. 141, 144 (1999). The Board accordingly vacated and remanded the administrative judge's Initial Decision. The Board, however, declined to grant Mr. Chianelli's request for reassignment of the remanded IRA appeal to a different administrative judge, concluding that his claims of bias "are based on the administrative judge's perceived adjudicatory errors. As such, he has failed to set forth any evidence to overcome the presumption of honesty and integrity that accompanies administrative adjudicators and has not provided a basis for appointing a new administrative judge on remand." *Id.* at 145–46.

On remand, the administrative judge scheduled a hearing that was to cover jurisdictional matters as well as the merits of the IRA appeal. Mr. Chianelli, however, withdrew his request for the hearing on the eve of that hearing. (That withdrawal apparently occurred several days after the administrative judge denied a recusal motion filed by petitioner.) On January 5, 2000, the administrative judge issued another Initial Decision ("remand Initial Decision") again dismissing the appeal for lack of jurisdiction. *Chianelli v. Envtl. Prot. Agency,* No. DE–1221–98–0173–B–2 (M.S.P.B. Jan. 5, 2000).

In the remand Initial Decision, the administrative judge "incorporate[d] by reference the findings of fact and conclusions of law made in [the May 1998] initial decision concerning the [petitioner's] disclosures." *Id.,* slip op. at 4–5. The administrative judge further found

that Mr. Chianelli's "differences with EPA's Region 8 management were solely over the region's environmental policies." *Id.,* slip op. at 6. Relying in part on this court's decision in *Lachance v. White,* 174 F.3d 1378 (Fed.Cir.1999), *cert. denied,* 528 U.S. 1153, 120 S.Ct. 1157, 145 L.Ed.2d 1069 (2000), he concluded that Mr. Chianelli "has failed to carry his burden of demonstrating that he reasonably believed that his disclosures were protected under 5 U.S.C. § 2302(b)(8)." *Id.,* slip op. at 6–7. As in the May 1998 Initial Decision, the administrative judge again applied an incorrect legal standard. Again, the administrative judge justified his conclusion, in part, by pointing to Mr. Chianelli's alleged history of misconduct at the agency:

> [T]he WPA is not a weapon to be used by employees in arguments over agency policy or as a shield for misconduct or unacceptable performance. Here, I find that the appellate record reveals that the [petitioner] was both a poor performer and that he had engaged in various acts of misconduct including insubordination and sexual harassment.
>
> Accordingly, I find that the [petitioner] has failed to carry his burden of demonstrating that he reasonably believed that his disclosures were protected under [the WPA].

*Id.,* slip op. at 6–7.

Mr. Chianelli petitioned the full Board for review of the administrative judge's remand Initial Decision. In that petition, he argued, *inter alia,* that the administrative judge should have recused himself from the case. The Board granted the petition and affirmed the administrative judge's dismissal of the IRA appeal, holding that it "concur[red] in the administrative judge's finding that the appellant failed to show that he made disclosures

protected under [the WPA]." *Chianelli,* 86 M.S.P.R. at 658.

In reaching that conclusion, however, the Board performed an extensive independent analysis of the record. Based on that independent analysis, the Board concluded that neither the memoranda provided to OSC, nor Mr. Chianelli's complaint to the OIG in 1995 regarding Utah's receipt of agency funds, constituted disclosures protected under 5 U.S.C. § 2302(b)(8).[2] The Board did not address specifically petitioner's argument regarding the administrative judge's denial of the recusal motion.

Regarding Mr. Chianelli's August 9, 1996, memorandum, the Board made two findings. First, it found that in his "fairly general criticisms" of North Dakota's funding request, Mr. Chianelli nowhere indicated the extent to which he believed the requested funds would be wasted by that state. The Board accordingly concluded that Mr. Chianelli could not have reasonably believed that his criticisms concerned instances of "gross mismanagement, a gross waste of funds, or any other matter covered by [the WPA]." *Chianelli,* 86 M.S.P.R. at 655. Similarly, the Board found that Mr. Chianelli's complaint regarding North Dakota's delay in submitting its generic plan appeared "to constitute only unsubstantiated policy disagreements with other agency officials,"

rather than disclosures protected under the WPA. *Id.*

The Board next analyzed together Mr. Chianelli's complaint to the OIG and his October 1, 1996, memorandum, as they raised substantially similar (if not identical) allegations of agency misconduct in its oversight of certain states' pesticides prevention programs. The Board assumed *arguendo* that the petitioner believed that those disclosures were protected under the WPA, but nonetheless concluded that the "record fails . . . to establish that this belief was reasonable." *Id.* at 656.

The Board acknowledged that Mr. Chianelli's report to the OIG in early 1995 had prompted an investigation into the agency's oversight of Utah's prevention program. But it found that the existence of the OIG audit report, standing alone, did not establish that the petitioner reasonably believed that his 1995 report to the OIG, or the corresponding October 1996 memorandum, constituted disclosures protected under the WPA. In reaching that conclusion, the Board noted that petitioner had not referred to any law, rule or regulation allegedly violated by the agency. Nor did the petitioner describe how the expenditure of the funds in support of those programs constituted either gross mismanagement or a gross waste of funds. In short, the Board found that the petitioner's generalized allegations, without more, did

---

**2.** In his IRA appeal, Mr. Chianelli also alleged that he made protected disclosures to various agency supervisors, certain unidentified "legislators," and other federal agencies. Relying on this court's decision in *Horton v. Department of the Navy,* 66 F.3d 279, 282 (Fed.Cir. 1995), *cert. denied,* 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 218 (1996), the Board held that "the disclosures that the [petitioner] made to the officials he alleged had engaged in wrongdoing were not protected under 5 U.S.C. § 2302." *Chianelli,* 86 M.S.P.R. at 654.

The Board further found that Mr. Chianelli did not raise with the Office of Special Counsel ("OSC") his disclosures to the "legislators" and other federal agencies before filing his IRA appeal. As the WPA limits the Board's jurisdiction over IRA appeals to those issues first raised with the OSC, 5 U.S.C. § 1214(a)(3), the Board concluded that those disclosures could not support a claim under the WPA. *Id.* On appeal here, Mr. Chianelli does not challenge these determinations of the Board with regard to the disclosures to his supervisors, the unidentified "legislators," and other federal agencies.

not show that "he had a reasonable belief that his disclosures evidenced a violation of law, rule, or regulation, gross mismanagement, or any other matter specified in section 2303(b)(8)." *Id.* at 657.

In light of this determination, the Board did not reach the other jurisdictional question of whether Mr. Chianelli's disclosures were a contributing factor in any personnel action. Nor did it decide whether the agency would have taken those actions in the absence of Mr. Chianelli's disclosures. *Id.* at 658. The Board did, however, observe with regard to these latter two jurisdictional prerequisites that the administrative judge in the remand Initial Decision had "included findings regarding the quality of the appellant's performance and regarding evidence of misconduct." *Id.* at 658 n .2. The Board concluded that "[b]ecause these findings would be relevant only to one of the issues [the administrative judge] did not address—i.e., the issue of whether the agency would have taken the same action against the appellant in the absence of any protected disclosures— the findings were unnecessary." *Id.* The Board accordingly affirmed the administrative judge's remand Initial Decision dismissing Mr. Chianelli's IRA appeal for lack of jurisdiction. This timely pro se petition followed.

## DISCUSSION

### I

■ We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(9). Our scope of review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Chase–Baker v. Dep't of Justice,* 198 F.3d 843, 845

(Fed.Cir.1999). The scope of the Board's jurisdiction is a legal question that we review without deference. *Forest v. Merit Sys. Prot. Bd.,* 47 F.3d 409, 410 (Fed.Cir. 1995). Mr. Chianelli has the burden of establishing the Board's jurisdiction by a preponderance of the evidence. 5 C.F.R. § 1201.56(a)(2); *Serrao v. Merit Sys. Prot. Bd.,* 95 F.3d 1569, 1573 (Fed.Cir.1996).

### II

Before this court, Mr. Chianelli argues that the Board erred in concluding that his 1995 complaint to the OIG regarding the agency's oversight of Utah's pesticides prevention program, and his statements in the memoranda supplied to the OSC, were not "protected disclosures" under the WPA. He contends that he "explained and provided details on many of my disclosures under oath and adequately addressed their reasonableness." In other words, Mr. Chianelli appears to argue that he reasonably believed his disclosures to have been protected under the WPA.

■ A brief review of the statutory scheme is necessary here. In order for the Board to have jurisdiction over an IRA appeal involving an allegation of retaliation for "whistleblowing" activities, an employee must make a nonfrivolous allegation: (1) that he made a disclosure protected under 5 U.S.C. § 2302(b)(8); and (2) that the protected disclosure was a contributing factor in the personnel action. *See* 5 U.S.C. § 1221(e)(1); 5 C.F.R. § 1209.7; *Meuwissen v. Dep't of the Interior,* 234 F.3d 9, 12 (Fed.Cir.2000).

A protected disclosure is a disclosure which an employee reasonably believes evidences "(i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A). Thus, in order for Mr.

Chianelli to prevail in his IRA appeal, he was first required to demonstrate that he made a disclosure that he reasonably believed fell within the scope of 5 U.S.C. § 2302(b)(8)(A).

In *Lachance v. White,* 174 F.3d 1378 (Fed.Cir.1999), this court set forth the standard to determine the reasonableness of a putative whistleblower's belief in the protected nature of his disclosures:

> [T]he proper test is this: could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence gross mismanagement?

*Id.* at 1381.

■ We further emphasized in *Lachance* that this standard is an objective one: "A purely subjective perspective of an employee is not sufficient even if shared by other employees." *Id.* In other words, the question here is not whether Mr. Chianelli believed that his disclosures were protected under the WPA because they evidenced instances of gross mismanagement or other misconduct by agency employees. Rather, the question is whether an objectively reasonably person with full knowledge of the essential facts would have believed those disclosures to be protected.

As an initial matter, we note that the administrative judge in this case appears to have seriously misunderstood the role and scope of the WPA. In both the Initial Decision and the remand Initial Decision, the administrative judge appeared to hold as a matter of law that the allegations of Mr. Chianelli's sexual harassment and other misconduct during his tenure with the agency necessarily meant that the petitioner could not have reasonably believed his disclosures fell under the WPA. Indeed, the administrative judge opined that "the WPA was not intended to protect pure troublemakers like the [petitioner]." Initial Decision, slip op. at 4.

■ This view of the WPA is plainly wrong. In *Lachance,* we did instruct the Board, when considering the reasonableness of a putative whistleblower's belief in the protected nature of his disclosures, to take into account that individual's "personal bias or self interestedness in the matter." 174 F.3d at 1381. We cautioned, however, that the Board should do so "[w]ithout impugning the motives of the putative whistleblower." *Id.* In this case, the administrative judge did precisely that. In short, any characterization of Mr. Chianelli as a "pure troublemaker" was irrelevant to the question whether his disclosures fell within the scope of the WPA and inappropriate.

Had the Board's decision relied on the administrative judge's mistaken view of the WPA (and his accordingly tainted findings), we would reverse. Here, however, the Board found, based on its independent and thorough review of the record, that Mr. Chianelli failed to show that he reasonably believed that his disclosures were protected under the WPA. We discern no error in that conclusion of the Board.

■ As noted above, the burden rested on Mr. Chianelli to establish the Board's jurisdiction over his IRA appeal by a preponderance of the evidence. The petitioner, however, has provided no evidence to support his whistleblowing claim other than his generalized allegations of the agency's misconduct in its expenditure of certain funds and its oversight of certain states' environmental protection programs. It is apparent that Mr. Chianelli disagrees with the agency's expenditures of certain funds, but we have previously instructed that the "WPA is not a weapon in arguments over policy...." *Lachance,* 174 F.3d at 1381; *see also Willis v. Dep't of*

*Agric.*, 141 F.3d 1139, 1143 (Fed.Cir.1998) ("Discussion and even disagreement with supervisors over job-related activities is a normal part of most occupations.").

Mr. Chianelli's efforts may have provided a service to the agency, and his conduct may have shown fidelity to his duties as an employee of the agency, but he has not shown the existence of a reasonable belief of "gross mismanagement" or other misconduct sufficient to make out a claim under the WPA. As a result of Mr. Chianelli's waiver of his right to a hearing—a hearing specifically ordered by the Board at Mr. Chianelli's request—he cannot complain that his case was decided on an incomplete record. In short, based on the written record supplied here, we affirm the Board's conclusion that it lacked jurisdiction over Mr. Chianelli's IRA appeal because it was based on substantial evidence.

### III

Mr. Chianelli next argues that the administrative judge "should have been removed from this case and his inappropriate actions/comments, etc. investigated." We assume that Mr. Chianelli is arguing here that the Board erred in 1999 when, following its decision to vacate and remand the Initial Decision, it did not reassign his IRA appeal to a different administrative judge, and in failing to order the administrative judge's recusal in the most recent appeal.

To the extent that petitioner complains of the administrative judge's failure to recuse after remand, that issue appears to have been waived. Under 5 C.F.R. § 1201.42(c), if an administrative judge denies a party's motion to recuse himself, "the party requesting withdrawal may request certification of the issue to the Board as an interlocutory appeal under [5 C.F.R. § 1201.91]. Failure to request certification is considered a waiver of the request for withdrawal." The record does not reveal that Mr. Chianelli ever requested that the administrative judge certify as an interlocutory appeal to the Board the denial of the recusal motion. However, the recusal and reassignment issues are essentially identical, and the reassignment request effectively preserved the recusal question.

In denying Mr. Chianelli's request for reassignment of his remanded IRA appeal, the Board concluded that his claims of bias "are based on the administrative judge's perceived adjudicatory errors. As such, he has failed to set forth any evidence to overcome the presumption of honesty and integrity that accompanies administrative adjudicators and has not provided a basis for appointing a new administrative judge on remand." *Chianelli v. Envtl. Prot. Agency*, 81 M.S.P.R. 141, 145–46 (1999).

In *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), the Supreme Court recognized that evidence of a federal judge's "deep-seated ... antagonism" toward a party can under some circumstances (albeit rarely) constitute a basis for a successful bias or partiality motion under the federal judicial recusal statute, 28 U.S.C. § 455:[3]

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion *unless they display a deep-seat-*

---

3. Subsection (a) of that statute provides, in pertinent part, that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Subsection (b) further provides, in pertinent part, that any of those judicial officers "shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party ..."

ed favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id.* at 555, 114 S.Ct. 1147 (first emphasis added; second and third emphases in original).

▇ The federal statute at issue in *Liteky* by its terms does not apply to the Board's administrative judges. Rather, the authority to disqualify those officials for personal bias arises from section 556 of the Administrative Procedure Act, codified at 5 U.S.C. § 556(b),[4] and the Board's own regulation, codified at 5 C.F.R. 1201.42.[5] We believe, however, that the Supreme Court's reasoning in *Liteky* regarding the disqualification of federal judges applies with equal force to the disqualification of administrative judges. Indeed, we note that the Board has previously looked to the language of 28 U.S.C. § 455 and corresponding federal case law, including the Supreme Court's decision in *Liteky*, when deciding the propriety of an administrative judge's denial of a disqualification motion. *See, e.g., Washington v. Dep't of the Interior*, 81 M.S.P.R. 101, 104 (1999) ("There is

no requirement that the Board be bound by the federal judicial rule, inasmuch as it is not a court, but ... we see no reason not to look to the rule and case law arising from 28 U.S.C. § 455, where relevant ..."). We conclude that Mr. Chianelli properly raised a question of bias by the administrative judge in his 1999 reassignment request.

▇ While any bias by the administrative judge is unlikely to have had affected the result, given the Board's independent review, the Supreme Court has made clear that denial of the right to an impartial judge can never be harmless error. *See Chapman v. California*, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966) (stating that the right to an impartial judge is an example of a constitutional right "so basic to a fair trial that their infraction can never be treated as harmless error"); *see also In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). We must therefore address this question of the merits.

▇ In *Liteky*, the Supreme Court suggested that reviewing bodies have discretion to require reassignment upon remand even where recusal would not be required. *Liteky*, 510 U.S. at 554, 114 S.Ct. 1147. We believe that the Board plainly had the authority to reassign this case to another administrative judge on the first appeal. *See, e.g., Johnson v. Sawyer*, 120 F.3d 1307, 1334 (5th Cir.1997) (reassigning case on remand to another

---

4. That statute provides, in pertinent part, that "[t]he functions of presiding employees and of employees participating in decisions ... shall be conducted in an impartial manner. A presiding or participating employee may at any time disqualify himself. On the filing in good faith of a timely and sufficient affidavit of personal bias or other disqualification of a presiding or participating employee, the agency shall determine the matter as a part of the record and decision in the case." 5 U.S.C. § 556(b).

5. Subsection (b) of that regulation provides, in pertinent part, that "[a] party may file a motion asking the judge to withdraw on the basis of personal bias or other disqualification. This motion must be filed as soon as the party has reason to believe there is a basis for disqualification. The reasons for the request must be set out in an affidavit or sworn statement under 28 U.S.C. 1746." 5 C.F.R. § 1201.42(b).

district court judge "to preserve the appearance of impartiality, fairness and justice"); *Gallagher v. Dep't of the Air Force*, 84 M.S.P.R. 441, 443 (1999) (reassigning case on remand to a different administrative judge "because the appearance of partiality here has sufficiently tainted the proceeding below"). But we conclude that its failure to reassign this case is not reversible error because the bias statute did not require recusal. The source of bias here was not extrajudicial, and the Supreme Court in *Liteky* has told us that recusal is not required in such circumstances unless we find "such a high degree of favoritism or antagonism as to make fair judgment impossible." 510 U.S. at 555, 114 S.Ct. 1147. While the administrative judge's comments were clearly inappropriate, they did not rise to that level.

## CONCLUSION

For the foregoing reasons, the decision of the Merit Systems Protection Board is *affirmed.*

## COSTS

No costs.