NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BARRY AHURUONYE,**

*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**

*Respondent*

---

2017-1503

---

Petitions for review of the Merit Systems Protection Board in Nos. DC-1221-15-0295-W-1, DC-1221-16-0398-W-1, DC-1221-16-0474-W-1, DC-1221-16-0501-W-1, DC-1221-16-0838-W-1.

---

Decided: June 8, 2017

---

BARRY AHURUONYE, Hyattsville, MD, pro se.

RUSSELL JAMES UPTON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER.

---

Before PROST, *Chief Judge,* TARANTO and HUGHES, *Circuit Judges.*

PER CURIAM.

From December 2011 through April 2015, Barry Ahuruonye worked as a Grants Management Specialist at the U.S. Fish and Wildlife Service in the Department of the Interior (Department). Between December 2014 and August 2016, Mr. Ahuruonye filed at least five separate appeals with the Merit Systems Protection Board, alleging that various actions by the Department constituted whistleblower retaliation. In a consolidated decision, the Board's administrative judge denied Mr. Ahuruonye's appeal seeking corrective action for a Department-proposed five-day suspension and dismissed four of his other appeals for lack of jurisdiction. Initial Decision, *Ahuruonye v. Dep't of Interior*, Nos. DC-1221-16-0501-W-1, DC-1221-15-0295-W-1, DC-1221-16-0398-W-1, DC-1221-16-0474-W-1, DC-1221-16-0838-W-1 (M.S.P.B. Nov. 17, 2016) (Decision). For the reasons discussed below, we affirm in part, vacate in part, and remand in part.

I

A

In November 2012, less than a year after starting in his Grants Management Specialist position, Mr. Ahuruonye filed one of many complaints with the Department's Office of the Inspector General. The complaint alleged that his first-line supervisor, Penny Bartnicki, had made illegal grant awards. Ms. Bartnicki became aware of the allegation in January 2013.

On June 24, 2013, Mr. Ahuruonye received a bill for $343.64 from David Yeo in the Department's Debt Management Branch. The bill sought repayment of health benefits that the Department had erroneously paid to Mr. Ahuruonye, or on his behalf, from April 7, 2013, to June 1,

2013.  Mr. Ahuruonye's wages were subsequently garnished to recoup the overpayment.

On April 29, 2014, Mr. Ahuruonye made a new accusation of wrongdoing by Ms. Bartnicki—illegal approval of funds related to a Mississippi River Delta Management Strategic Planning Grant.  He made that allegation to his second-line supervisor, Tom Busiahn.  According to the papers before us, Ms. Bartnicki learned of the charge on April 30, 2014.

On July 11, 2014, Mr. Ahuruonye copied Ms. Bartnicki on an email he sent to Kristin Smith, his coworker.  In the email, he said that there was no point in working with the Mississippi Department of Marine Resources to evaluate its request for increased funding because the grant had been illegally awarded in the first place.  Three days later, Ms. Bartnicki replied, disputing Mr. Ahuruonye's factual assertions and instructing him to work with Ms. Smith on the grant.  On August 11, 2014, Mr. Ahuruonye sent an email to Ms. Smith, copying Ms. Bartnicki and, it appears, Mr. Busiahn and the Office of the Inspector General.  The email states: "Per DOI/OIG determination this project is ineligible for funding if Penny [Bartnicki] wants to fund it that's on her as far as I know funding this project is unlawful and illegal."

On September 17, 2014, Mr. Ahuruonye made additional allegations against Ms. Bartnicki to Mr. Busiahn.  He asserted that Ms. Bartnicki had violated the law with respect to another grant and expressed his concern that Ms. Bartnicki was asking him to sign off on Endangered Species Act certification forms without making site visits to ensure that the projects were in compliance.  Two days later, Ms. Bartnicki changed the standard operating procedures so that Grants Management Specialists (like Mr. Ahuruonye) no longer had to sign off on those certifications.

On September 25, 2014, Ms. Bartnicki proposed to suspend Mr. Ahuruonye for five days, specifying four instances of "[f]ailure to follow supervisory instructions" and one instance of "[d]eliberately making known false unfounded statements about your supervisor and other Government officials." Resp't's App. 35–40. Mr. Ahuruonye challenged the proposed suspension, hiring counsel to represent him before the agency's deciding official, Charles David Goad. Five days before Mr. Ahuruonye was set to meet with Mr. Goad to respond to the charges, Mr. Goad unexpectedly died. It appears that another deciding official was assigned, but a decision was never reached and the suspension never took effect. *See* Pet'r's Br. 12.

On March 3, 2015, Mr. Ahuruonye received a bill from Matthew Neyer in the Debt Management Branch of the Department's payroll office. The bill sought recoupment of $1,790.44 in wages and benefits paid to Mr. Ahuruonye for hours he did not work. This money appears to have been subsequently garnished from some wages owed to Mr. Ahuruonye.

On March 26, 2015, the Department issued to Mr. Ahuruonye a notice proposing to remove him from his position. His timesheets are coded "absent without leave" on March 27, 2015, and "administrative leave" from March 29, 2015, through April 24, 2015.

The Department removed Mr. Ahuruonye on April 14, 24, or 26, 2015,[1] and that removal was sustained in a

---

[1]    The administrative judge found (without discussion), and the government represents, that Mr. Ahuruonye was removed on April 24 (a Friday). Decision at 2; Resp't's Br. 9. That date is used in the initial decision made in Mr. Ahuruonye's removal appeal. *Ahuruonye v. Dep't of Interior*, No. DC-0432-15-0649-I-2, 2016 WL

decision not at issue here. *Ahuruonye v. Dep't of Interior*, No. DC-0432-15-0649-I-2, 2016 WL 3386637 (M.S.P.B. June 15, 2016) (initial decision). Mr. Ahuruonye alleges to us that he was issued a leave-and-earnings statement dated April 28, 2015, which paid him $1,505.40, and that he was actually due $1,711.04. The agency seems to disagree, the Board made no factual findings on the issue, and no April 28, 2015 statement has been provided to this court.

On October 29, 2015, Mr. Ahuruonye received a collection notice from the Department for $91.03. A statement titled "Transferred Bill Information," dated October 22, 2015, explained that the $91.03 debt "was the result of a time sheet correction submitted by your agency for pay period(s) 201510." Resp't's App. 131. It is not clear whether or when Mr. Ahuruonye paid this bill.

B

In five separate appeals, Mr. Ahuruonye challenged (1) the September 2015 proposed five-day suspension, DC-1221-15-0295-W-1 (M.S.P.B. filed Dec. 28, 2014); (2) the October 2015 $91.03 bill, DC-1221-16-0398-W-1 (M.S.P.B. filed Mar. 1, 2016); (3) the March 2015 bill and subsequent wage garnishment, DC-1221-16-0474-W-1

---

3386637 (M.S.P.B. June 15, 2016) (initial decision). Payroll records submitted in DC-1221-16-0501-W-1 indicate that his employment was terminated as of April 26 (a Sunday). Resp't's App. 250, 257. Mr. Ahuruonye contends that he was terminated on April 14 (a Tuesday), consistent with documentary evidence that his health coverage was terminated as of the 17th. Pet'r's Br. 22, Pet'r's App. 10 at 11A, 11B; *see also* Pet'r's Br. 7 (contending that Mr. Ahuruonye had brought this dispute to the administrative judge's attention and that the judge indicated he would rule on it in his initial decision).

(M.S.P.B. filed Apr. 5, 2016); (4) the time-sheet records for March 27, 2015, through April 26, 2015, DC-1221-16-0501-W-1 (M.S.P.B. filed Apr. 14, 2016); and (5) the June 2013 bill and subsequent garnishment, DC-1221-16-0838-W-1 (M.S.P.B. filed Aug. 28, 2016).

In the earliest appeal, DC-1221-15-0295-W-1, the administrative judge found Board jurisdiction on October 26, 2015, and also reassigned the appeal to another administrative judge who was already handling other appeals involving the same parties. Mr. Ahuruonye sought no hearing in that appeal, and the parties submitted their close-of-record statements on March 18, 2016.

On April 13, 2016, that appeal, *i.e.*, DC-1221-15-0295-W-1 (proposed suspension), was joined with DC-1221-16-0398-W-1 ($91.03 debt) and DC-1221-16-0474-W-1 (March 2015 bill and garnishment). On April 26, 2016, DC-1221-16-0501-W-1 (time-sheet records) was joined to the previous three cases, and the final appeal, DC-1221-16-0838-W-1 (June 2013 bill and garnishment), was joined on September 2, 2016.

The administrative judge, now handling all five appeals, issued an initial decision on November 17, 2016. For the proposed-suspension appeal, which (like the others) rested on a charge of whistleblower retaliation, DC-1221-15-0295-W-1, the initial decision concludes that, while Mr. Ahuruonye established by a preponderance of the evidence that his protected disclosures contributed to Ms. Bartnicki's decision to propose his suspension, the Department established by clear and convincing evidence that it would have proposed Mr. Ahuruonye's suspension anyway. Decision at 7–11. As to all of the other appeals, the initial decision finds a lack of Board jurisdiction. *Id.* at 11–15. Mr. Ahuruonye did not seek review by the full Board, and the initial decision became the Board's final decision on December 22, 2016. For that reason, we hereafter refer to the administrative judge as the Board.

Mr. Ahuruonye timely sought review in this court. We have jurisdiction. 28 U.S.C. § 1295(a)(9).

II

Each of the appeals filed by Mr. Ahuruonye invokes 5 U.S.C. § 1221(a), which provides an individual right of action to seek Board relief in certain reprisal cases. In each appeal, Mr. Ahuruonye alleges that the Department took actions in retaliation for his disclosures of information he reasonably believed (a) violated a law, rule, or regulation or (b) evidenced gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *See* 5 U.S.C. § 2302(b)(8).

In order to establish Board jurisdiction over his appeals, Mr. Ahuruonye had to show that he "exhausted his administrative remedies before the [Office of Special Counsel] and ma[de] 'non-frivolous allegations' that (1) he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)." *Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). "'[A] non-frivolous allegation' of an element required for Board jurisdiction" is "one that, 'if proven, can establish the Board's jurisdiction' insofar as that element is concerned." *Cahill v. Merit Sys. Prot. Bd.*, 821 F.3d 1370, 1373 (Fed. Cir. 2016) (quoting *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1330 (Fed. Cir. 2006) (en banc)). "Non-frivolous allegations cannot be supported by unsubstantiated speculation in a pleading submitted by petitioner." *Dorrall v. Dep't of the Army*, 301 F.3d 1375, 1380 (Fed. Cir. 2002), *overruled on other grounds by Garcia*, 437 F.3d 1322; *see Kahn v. Dep't of Justice*, 528 F.3d 1336, 1341 (Fed. Cir. 2008) (analogizing the standard for non-frivolous allegations to that for summary judgment). The jurisdictional analysis may be

conducted entirely on the written record and need not involve a hearing. *Kahn*, 528 F.3d at 1341; *Ward v. Merit Sys. Prot. Bd.*, 981 F.2d 521, 525 (Fed. Cir. 1992).

Once jurisdiction is established, a whistleblower claimant is entitled to a hearing on the merits of the claim, if requested. 5 U.S.C. § 7701(a)(1); 5 C.F.R. § 1201.24(d), (e). At that stage, the claimant must establish, by a preponderance of the evidence, that a given disclosure is a protected disclosure within 5 U.S.C. § 2302(b) and was a contributing factor in the agency's decision to take the challenged action. 5 U.S.C. § 7701(c)(1)(B); *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012). The claimant "may demonstrate that the disclosure or protected activity was a contributing factor in the personnel action through circumstantial evidence, such as evidence that—(A) the official taking the personnel action knew of the disclosure or protected activity; and (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1).

Once such showings are made, the agency may still defeat the whistleblowing charge. The claimant loses "if, after a finding that a protected disclosure was a contributing factor, the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." *Id.* § 1221(e)(2); *see Whitmore*, 680 F.3d at 1367. In deciding whether the agency would have taken the same action without the protected disclosure, the Board examines all the evidence, including the following factors: "(1) the strength of the agency's reason for the personnel action excluding the whistleblowing, (2) the strength of any motive to retaliate for the whistleblowing, and (3) any evidence of similar action against similarly situated employees for the non-whistleblowing aspect alone." *Kalil*

*v. Dep't of Agric.*, 479 F.3d 821, 824 (Fed. Cir. 2007); *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). "Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore*, 680 F.3d at 1368.

This court will "set aside any agency action, findings, or conclusions found to be—(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Where the Board has not made adequate findings on important components of the required analysis, we may vacate and remand for further findings. *See Whitmore*, 680 F.3d at 1372–75; *Holderfield v. Merit Sys. Prot. Bd.*, 326 F.3d 1207, 1209 (Fed. Cir. 2003); *Whittington v. Merit Sys. Prot. Bd.*, 80 F.3d 471, 476 (Fed. Cir. 1996).

## A

In DC-1221-15-0295-W-1, the Board found (1) that it had jurisdiction over the claim, (2) that Mr. Ahuruonye had made protected disclosures, and (3) that those disclosures were a contributing factor in the Department's proposal to suspend Mr. Ahuruonye, citing Ms. Bartnicki's awareness of the disclosures and the fact that she proposed the suspension less than six months later. Decision at 7–8. Nevertheless, the Board rejected the whistleblower claim on the ground that the Department had shown, by clear and convincing evidence, that it would have proposed Mr. Ahuruonye's suspension anyway. *Id.* at 11. We conclude that the Board did not make adequate findings necessary to support that ultimate finding, and we

therefore remand for further proceedings in DC-1221-15-0295-W-1.[2]

The proposed suspension rested on four alleged instances of failure to follow supervisory instructions and one alleged instance of deliberately making known false and unfounded statements about a supervisor. Mr. Ahuruonye allegedly failed to follow instructions because (1) he was instructed to work with Ms. Smith on the Mississippi Department of Marine Resources grant, but instead told her, "'Per DOI/OIG determination this project is ineligible for funding if Penny wants to fund it that's on her as far as I know funding this project is unlawful and illegal,'" Decision at 9; (2) he was instructed to prepare a particular correction letter on August 18, 2014, but failed to do so, *id.*; (3) between June 1, 2014, and September 19, 2014, he was provided with 19 grant-review notes containing instructions to correct deficiencies that he did not correct; *id.* at 9–10; and (4) he failed to ensure that a particular award letter and completed grant checklist were uploaded to the electronic grant file as instructed, *id.* at 10. The basis for the charge of making known false statements about his supervisor was the "Per DOI/OIG" email to Ms. Smith quoted above, which allegedly suggested that Ms. Barnicki would approve illegal grants. *Id.* at 10.

Mr. Ahuruonye's appeal in DC-1221-15-0295-W-1 addresses a *proposed* five-day suspension. The Department does not dispute, and the Board did not deny, that Mr. Ahuruonye may challenge the proposed suspension even

---

[2]    Mr. Ahuruonye is no longer employed by the Department, but the government has not suggested that we need not decide the challenge to the proposed suspension, for that reason or any other.

though no suspension in fact occurred.[3] The Board stated that, in determining what the Department would have done in the absence of Mr. Ahuruonye's disclosures, it must "consider all of the relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Id.* at 8–9; *see Carr*, 185 F.3d at 1323. But the Board's findings as to those considerations was lacking.

Regarding the latter two considerations, the Board said nothing direct, certainly nothing significant, to support the finding that the Department would have proposed the suspension regardless of the disclosures. Yet at least the "motive to retaliate" consideration warranted discussion. The Board in its merits decision observed that "the work relationship between the appellant and Ms. Bartnicki could be characterized as troubled, and

---

[3] *See* 5 U.S.C. § 1221(a) ("[A]n employee . . . may, with respect to any personnel action taken, or proposed to be taken, against such employee . . . , as a result of a prohibited personnel practice described in section 2302(b)(8) . . . , seek corrective action from the Merit Systems Protection Board."); *id.* § 2302(b)(8) ("Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority . . . take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee . . . because of . . . any [protected disclosure] . . . ."); *id.* § 2302(a)(2)(A) (including "an action under chapter 75 of this title or other disciplinary or corrective action" in the definition of "personnel action"); *id.* § 7502 (covering suspensions of 14 days or less).

Ms. Bartnicki was fully aware of the appellant's whistle-blowing disclosures." Decision at 11. Moreover, in discussing the charge of making knowingly false statements, the Board recounted how Ms. Bartnicki herself viewed the disclosures as impugning her personal integrity. *Id.* at 10. And in its jurisdictional decision, the Board for similar reasons had found to be nonfrivolous the allegation that Ms. Bartnicki proposed the suspension because "she '[saw] no other way to deter [Mr. Ahuruonye] from making disclosures against [her]', or words to this effect, and because [his] whistleblowing activity was 'undermining her reputation' and creating a hostile work environment for her." Resp't's App. 107 (first alteration in original).[4] The Board's own rulings thus suggest that personal reputation was at stake, warranting some express attention to the motive-to-retaliate consideration.

In its opinion, the Board focused on the five bases the Department recited for the proposed removal. But the Board's evaluation of the strength of the agency's evidence is wanting. Decision at 9–10. Indeed, most of the brief discussion repeats the contents of Ms. Bartnicki's letter proposing the suspension without actually making factual determinations as to what happened.

With respect to Charge 1 (failure to follow instructions), the Board described Specification 1 and concluded only: "The appellant *apparently* failed to follow Ms. Bart-

---

[4]     Mr. Ahuruonye's appendix in this court includes what appears to be a declaration by Ms. Bartnicki from another proceeding, which states: "[Mr. Ahuruonye] periodically threatens to report me to the Office of Inspector General for what he perceives as my 'illegal actions,' in which he is totally inaccurate. . . .  In actuality, he is creating a hostile work environment for me." Pet'r's App. 8 at 8. It is not clear to us whether that declaration was included in the record before the Board.

nicki's instruction . . . ." Decision at 9 (emphasis added). The Board described Specification 2 and concluded: "The appellant *seemingly* failed to follow her instructions." *Id.* (emphasis added). Regarding Specification 3, the Board described instructions from Ms. Bartnicki and actually found: "The appellant failed to complete the task." *Id.* at 9–10. But then, for Specification 4 (of Charge 1), the Board merely recited that Mr. Ahuruonye "was charged with failure to ensure" that certain documents were uploaded. *Id.* at 10. And for Charge 2, the Board simply recited the charge of "deliberately making known false and unfounded" statements, including about Ms. Bartnicki, quotes the "Per DOI/OIG" email, and observes that Ms. Bartnicki asserted the perceived implication of the email and falsity of that implication. *Id.* Thus, only as to one of the five specifications did the Board make its own findings as to what actually occurred, as opposed to just reciting the charges or stating what "apparently" or "seemingly" occurred.

The Board's discussion is inadequate to permit our affirmance of the finding that the evidence was clear and convincing that the Department would have proposed the suspension even without the protected disclosures. Contributing to our conclusion of inadequacy are two features of the case worth highlighting. First, the Department's letter proposing the suspension relies on all of the stated grounds together; it does not say that the proposal would be the same if only some of the grounds were present. Resp't's App. 35–40. Second, as indicated in our discussion of the motivation to retaliate, Charge 2—that Mr. Ahuruonye made deliberately false allegations of illegality—is on its face hardly independent of the protected disclosures, *i.e.*, the allegations of illegality. Yet the Board did not make findings about the knowing falsity of the allegations or otherwise explain why, without such findings, Charge 2 was a basis for defeating the whistleblower claim, rather than reinforcing it.

B

The Board dismissed Mr. Ahuruonye's four other appeals for lack of jurisdiction. With respect to all four of these whistleblower appeals, the dismissal was proper, without a hearing, if the Board correctly found no non-frivolous allegations that the protected disclosures were a contributing factor in the challenged actions. *See Kerrigan v. Merit Sys. Prot. Bd.*, 833 F.3d 1349, 1354 (Fed. Cir. 2016); *Cahill*, 821 F.3d at 1373; *Kahn*, 528 F.3d at 1341; *Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 909 (Fed. Cir. 2008). We see no error in the Board's findings in this respect in any of the four appeals, whose dismissal we therefore uphold.[5]

In DC-1221-16-0398-W-1, Mr. Ahuruonye alleged that the Department was retaliating against him by improperly charging him $91.03 in October 2015 to recover medical benefits it had erroneously paid on his behalf. The Board held that Mr. Ahuruonye had not made any credible allegation that any individual involved in collecting this debt had any knowledge of his protected disclosures or that those disclosures were a contributing factor to the agency's decision. Mr. Ahuruonye has not pointed to any non-frivolous allegations that undermine that Board determination, such as allegations that the deciding officials took the actions at the recommendation of offi-

---

[5] We have scrutinized Mr. Ahuruonye's filings in this court and see no other basis for disturbing the dismissals as to these four appeals. We note that, although Mr. Ahuruonye in these four appeals to the Board had alleged disparate treatment discrimination and retaliation for filing an EEO complaint, the Board found no jurisdiction over the allegations (because it lacked jurisdiction over the underlying personnel actions), Decision at 15–16, and Mr. Ahuruonye has affirmatively waived his discrimination claims before this court, ECF No. 4.

cials who did know of the protected disclosures. *See Worthington v. Dep't of Defense*, 81 M.S.P.R. 532, 536 (M.S.P.B. Apr. 26, 1999).

In DC-1221-16-0474-W-1, Mr. Ahuruonye alleged that the Department was retaliating against him by undertaking "unlawful collections" totaling $1,790.44 in earlier overpayments, garnishing the amount from pay periods 6, 7, 8, 9, 10, and 12 of 2015. The Board found that Mr. Ahuruonye had failed to make a non-frivolous allegation that his protected disclosures were a contributing factor to the wage garnishment because he had failed to "provide any credible evidence to indicate that Mr. Neyer, or any other individual involved with the collection of the debt knew of [his] protected activities." Decision at 13.[6] We see no error in that determination and therefore uphold this dismissal.[7]

---

[6] The agency represented to the Board, and Mr. Ahuruonye does not appear to have disputed, that the $1,790.44 amount of the overpayment was previously adjudicated in DC-1221-15-1012-W-1 and that only the collection of the debt can be at issue here. *See Ahuruonye v. Dep't of Interior*, Nos. DC-1221-15-1012-W-1 et al., 2016 WL 526740, at B.vii (M.S.P.B. Feb. 5, 2016) (initial decision), *modified on other grounds*, 2016 WL 7335453 (M.S.P.B. Dec. 8, 2016).

[7] Besides the debt-collection aspect of this appeal, Mr. Ahuruonye asserted: "During the time the appellant was supposed to be on pre-termination Administrative Leave the agency provided the appellant with a bogus 'Leave and Earnings Statement' that he was paid 80 hours of Administrative Leave for the pay date of 4/28/15 which would have been net pay of $1,711.04 but the agency only paid $1,505.40 . . . ." Resp't's App. 137. He did not comprehensibly explain how a retaliation claim arises out of this contention, which appears to claim the

In DC-1221-16-0501-W-1, Mr. Ahuruonye sought "corrective action with respect to his Time and Attendance being designated as being on suspension due to a disciplinary action from March 27, 2015 to April 26, 2015." Resp't's App. 188. The Board found that this claim lacked merit because, even if Mr. Ahuruonye was improperly designated as being on suspension, he "did not provide any evidence to indicate the improper activity was caused by his whistleblowing activity" and, more specifically, he "failed to raise a non-frivolous argument that his protected disclosures were a contributing factor in the alleged personnel action." Decision at 14. We see no error in that determination, which suffices for us to uphold the dismissal of this appeal. In addition, and as an independent ground of affirmance, we see no error in the Board's determination that the Department's records conclusively show, contrary to Mr. Ahuruonye's premise, that he was not recorded to have been on a disciplinary suspension during the period at issue: the records coded him as absent without leave on March 27, 2015 (a Friday) and on "administrative leave" from March 29, 2015, through April 24, 2015. *Id.* at 13–14.[8]

---

$205.64 difference based on a "bogus" record. The Board noted the allegation, Decision at 12, and Mr. Ahuruonye has not identified a reversible error in the Board's evident conclusion that this allegation added nothing to the sustainability of jurisdiction over this appeal.

[8] There is some evidence that Mr. Ahuruonye was erroneously marked "absent without leave" on March 27 and should have been deemed on administrative leave that day. *See* Resp't's App. 245 (agency response conceding that "[a]s detailed in MSPB Docket No. DC-0752-15-0509-I-1, due to an administrative oversight, Mr. Ahuruonye was incorrectly coded as AWOL for March 27"), 251 (showing amended time sheet); Pet'r's Reply App. 1 at

In the last appeal, DC-1221-16-0838-W-1, Mr. Ahuruonye alleged that the agency garnished $343.64 from his wages in 2013 in retaliation for his protected disclosures. The Board found that Mr. Ahuruonye had "failed to raise a non-frivolous argument that his protected disclosures were a contributing factor in the alleged improper garnishment of his wages" because he "did not provide any credible evidence to indicate that Mr. Yeo, or any other individual involved with the collection of the debt knew of [his] protected activities." Decision at 15. As with the other appeals, we see no error in that determination. We therefore affirm the dismissal of this appeal for lack of jurisdiction.

## C

Finally, Mr. Ahuruonye alleges that Judge Dunnaville, the presiding official in all five of these appeals, was biased against him. Mr. Ahuruonye filed a motion for Judge Dunnaville to recuse himself because of "pervasive bias and prejudice" and "actions that ha[ve] evidenced a deep-seated favoritism and antagonism that have made and would make fair judgment impossible." Pet'r's App. 3 at 4 (citing *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1362–63 (Fed. Cir. 2002)).[9] Judge Dunnaville did not rule

---

9 (approving administrative leave as of March 26, 2015). Even so, there is no basis for the Board to find that he was on disciplinary suspension in the period at issue.

[9]    Although this motion requests that the judge "withdraw from any further involvement in this case and other cases," it was filed only in DC-1221-16-0501-W-1, on June 1, 2016, after it was joined to three other appeals but before DC-1221-16-0838-W-1 was filed or joined. Nevertheless, consistent with our practice of liberally interpreting pro se plaintiffs' papers, we will consider Mr. Ahuruonye to have raised the issue of bias with respect to all of the appeals at issue.

on the motion and did not discuss it in his initial decision. Mr. Ahuruonye did not ask for full Board review of the recusal matter.

We may assume (without deciding) that there was error in Judge Dunnaville's not ruling on the motion, *see* 5 U.S.C. § 556(b), and that Mr. Ahuruonye did not forfeit the claim of error when he bypassed the full Board. Nevertheless, we see no reversible error.   Mr. Ahuruonye's allegations do not meet the high bar of showing a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber*, 287 F.3d at 1362 (holding that the recusal standard articulated by the Supreme Court in *Liteky v. United States*, 510 U.S. 540 (1994), applies to M.S.P.B. administrative judges); *see id.* at 1363 n.3 (addressing allegations of bias made for the first time on appeal); *cf. Sine v. Local No. 992 Int'l Bhd. of Teamsters*, 882 F.2d 913, 914–15 (4th Cir. 1989) (holding that a district court judge's failure to rule on a recusal motion was not reversible error because the affidavits were insufficient as a matter of law).

The Board applies a presumption of honesty and integrity to administrative judges, *see, e.g., Stussy v. Dep't of the Treasury*, No. SF-1221-14-0068-W-1, 2015 WL 3874704, at ¶ 17 (M.S.P.B. June 23, 2015); *Sullivan v. Dep't of Transp.*, No. SF-1221-10-0137-W-3, 2012 WL 11881398, at *1 (M.S.P.B. Apr. 3, 2012), and we have indicated that there is a "strong presumption" that administrative judges discharge their duties in good faith, *Thomas v. Office of Pers. Mgmt.*, 350 F. App'x 448, 451 (Fed. Cir. 2009).   To establish bias, an appellant must show more than mere disagreement with the judge's substantive rulings. *See Chianelli v. Envtl. Prot. Agency*, 8 F. App'x 971, 979–81 (Fed. Cir. 2001).   And even the existence of multiple rulings adverse to the party, or multiple rulings containing errors, does not itself rise to the level needed for recusal, especially where the appel-

lant has presented a blizzard of filings, many hard to parse, that demand large numbers of rulings.

Mr. Ahuruonye identifies, as evidence of the administrative judge's bias, (1) that he did not conduct status conferences in four of the appeals; (2) that he did not disqualify the agency's lawyer when Mr. Ahuruonye so requested; (3) that he failed to address the exact date that Mr. Ahuruonye was terminated; and (4) that he sustained the agency's proposed suspension after the initial administrative judge on that appeal had found non-frivolous allegations that his disclosures contributed to the proposed suspension. Even taking into account our vacating of the proposed-suspension decision, we find nothing here beyond disagreement with the administrative judge's decisions. We make particular note that there is nothing inherently suspicious about one judge finding that Mr. Ahuruonye had made sufficient allegations to establish jurisdiction and a second judge finding—here, in a portion of the proceeding raising new issues (the agency's defense)—that the appellant was not entitled to prevail.

## III

For the reasons described above, we affirm the decisions in DC-1221-16-0398-W-1, DC-1221-16-0474-W-1, DC-1221-16-0501-W-1, and DC-1221-16-0838-W-1. We vacate the Board's decision in DC-1221-15-0295-W-1 (proposed suspension) and remand for further proceedings consistent with this opinion.

No costs.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED IN PART**