**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DAVETTE G. BUCHANAN, | DOCKET NUMBER |
| Appellant, | DC-1221-21-0390-W-1 |
| v. | |
| DEPARTMENT OF VETERANS AFFAIRS, | DATE: August 3, 2022 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Davette G. Buchanan</u>, Black Mountain, North Carolina, pro se.

<u>Erin Brady Rega</u>, Winston Salem, North Carolina, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**REMAND ORDER**

¶1    The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The appellant is a GS-7 Medical Instrument Technician at the Charles George Veterans Affairs (VA) Medical Center in Asheville, North Carolina. Initial Appeal File (IAF), Tab 1 at 1. She filed an IRA appeal with the Board and requested a hearing. *Id.* at 1. In her initial filing, she alleged that she was stabbed with a used hypodermic needle by a VA nurse in January 2018, the agency and the VA police failed to conduct a proper investigation of the incident, and agency employees mocked her and told her to get over it. *Id.* at 2. The administrative judge issued two show cause orders, which notified the appellant that the Board might not have jurisdiction over her appeal, informed her of her jurisdictional burden, and directed her to file evidence and argument on the issue. IAF, Tabs 3, 9.

¶3 After the record on jurisdiction closed, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction without holding the appellant's requested hearing. IAF, Tab 1 at 1, Tab 15, Initial Decision (ID) at 1, 19. She determined that the appellant had exhausted with the Office of Special Counsel (OSC) her claims that she made protected disclosures when she reported the needle-stick incident and an alleged threat of gun violence by the same nurse colleague who stabbed her with the used needle and that she engaged in protected activity when she complained to the Office of the Inspector General (OIG) about the needle-stick incident. ID at 7-8. The administrative judge also concluded that the appellant had nonfrivolously alleged that she made disclosures that a reasonable person in her position would believe evidenced a violation of law in connection with these two events. ID at 9-10. Specifically, she found the appellant's allegation that a nurse intentionally stuck her with a needle disclosed an assault and the appellant's allegation that a nurse threatened her with gun

violence disclosed a misdemeanor threat under North Carolina statute, N.C. Gen. Stat. § 14-277.1.  ID at 9-10; 5 U.S.C. § 2302(b)(8)(A)(i).  Additionally, she determined that the appellant had nonfrivolously alleged that she engaged in protected activity when she filed a complaint with the OIG for the Department of Health and Human Services (DHHS).  ID at 10-11.  In that complaint, the appellant raised concerns about the agency's response to the needle-stick disclosure, arguing that the police investigation into the incident was inadequate and that the agency endangered her safety by allowing the nurse who assaulted her to remain employed with the agency.  IAF, Tab 12 at 6-9.

¶4 Regarding the purported personnel actions, the administrative judge concluded that the appellant exhausted with OSC the following allegations: (1) she had been subjected to a hostile work environment, (2) her duties and working conditions were changed, and (3) she had been denied a promised raise or promotion.  ID at 8, 15.  Nevertheless, she determined that the appellant failed to nonfrivolously allege facts sufficient to establish that any of these incidents amounted to a personnel action.  ID at 11-16.  She also concluded that the appellant neither exhausted her claim that she had been subjected to a negative suitability determination nor nonfrivolously alleged she was subjected to such a determination.  ID at 8 & n.3.  She found that the appellant, therefore, failed to establish jurisdiction over her appeal.

¶5 Alternatively, the administrative judge determined that even assuming the appellant made a nonfrivolous allegation that she was subjected to personnel actions in connection with these claims, she failed to nonfrivolously allege that her protected disclosures or activities were a contributing factor in the agency's decision to take or not take these alleged actions, based on either the knowledge/timing test or other evidence.  ID at 16-18.  Specifically, she found that the appellant's pleadings did not provide sufficient details concerning who took the alleged actions against her and whether any such individuals were aware of her disclosures or activities.  ID at 16-17.  Consequently, she concluded that,

despite being provided two opportunities to do so, the appellant "failed to identify any specific acting agency official or officials, what personnel actions they took, failed to take or threatened to take and why they did so," and so, she failed to establish that any of the appellant's disclosures or activities were a contributing factor in any of the challenged personnel actions. ID at 17-18.

¶6     The appellant has filed a petition for review and a supplement to her petition for review. Petition for Review (PFR) File, Tabs 1-2. The agency has filed a response in opposition to the petition for review. PFR File, Tab 4. The appellant has not filed a reply.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7     On review, the appellant argues that she would be able to establish her claims if she were permitted a hearing and the ability to call witnesses and reargues that the agency's investigation into the needle-stick incident was insufficient and flawed. PFR File, Tab 1 at 3-7. Additionally, she asserts that she has newly discovered evidence in the form of emails from a former agency employee showing that he contacted agency administrators and supervisors several times on her behalf and told them about the hostile actions being taken against the appellant, and she provides copies of those emails in her supplemental petition for review. PFR File, Tab 1 at 3-4, Tab 2 at 2-8. The appellant also has included an additional narrative statement setting forth a timeline of events starting with the January 2018 needle-stick incident and the subsequent investigation and running through June 2020, when she purportedly was denied a title change and a corresponding pay increase. PFR File, Tab 2 at 9-12. In this pleading, she also asserts that she was subjected to a negative suitability determination when she was stabbed by the agency employee with the used syringe. *Id.* at 9.

**The administrative judge properly determined that the appellant nonfrivolously alleged she made protected disclosures and engaged in protected activity and that she exhausted those claims with OSC.**

¶8　　The Board has jurisdiction over an IRA appeal if the appellant exhausts her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A).  *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 6 (2014).

¶9　　The administrative judge concluded that the appellant made a nonfrivolous allegation that she made protected disclosures that a nurse (1) stuck her with a needle on January 28, 2018, and (2) threatened her with gun violence on February 23, 2018.　ID at 9-10; IAF, Tab 7 at 4, 10, Tab 12 at 7-9.　The administrative judge also concluded that the appellant made a nonfrivolous allegation that she engaged in protected activity when she sent a complaint to the OIG for DHHS detailing the needle-stick incident and her belief that the agency's investigation into the incident was inadequate.　ID at 10-11; IAF, Tab 12 at 6-9. She found the appellant exhausted these disclosures and activity.　ID at 8.　The parties have not challenged these findings on review, and we discern no basis to disturb them.

¶10　　In the initial decision, the administrative judge interpreted the appellant's pleadings to find that she had identified three purported personnel actions taken against her:　(1) she was subjected to a hostile work environment, (2) her duties and working conditions were changed, and (3) she was not granted a raise she had been promised.[2]　ID at 11-16.　She found the appellant exhausted these claims.

---

[2] The appellant does not challenge the administrative judge's determination that she failed to meet her jurisdictional burden regarding an alleged suitability determination. In fact, on review the appellant alleges that "[m]y negative suitability determination is based on [the] misconduct [of the nurse who stuck the appellant with a needle and

ID at 7-8. The parties do not dispute the administrative judge's exhaustion finding on review, and we discern no basis for the Board to disturb it. The administrative judge then found that the appellant failed to nonfrivolously allege that her protected disclosures and activity were contributing factors in these personnel actions. ID at 16-18. We turn now to consider those findings.

The appellant nonfrivolously alleged that she was denied a promised promotion but still failed to nonfrivolously allege that her disclosure of the needle-stick incident contributed to this personnel action.

¶11     Regarding the appellant's claim that she was not granted a promised promotion, the administrative judge considered this claim as a potential personnel action under 5 U.S.C. § 2302(a)(2)(A)(ix), regarding a "decision concerning pay, benefits, or awards," but determined that the appellant failed to provide any explanation regarding the potential promotion or any evidence that a raise or promotion was actually promised. ID at 15-16. Consequently, she determined that the appellant had only provided "conclusory, vague, and unsupported allegations" for a lack of a promised raise, and so she failed to make a nonfrivolous allegation that she was denied a promised raise. ID at 16.

¶12     The appellant has provided some additional detail regarding this claim in her petition for review, alleging that she lost the promotion position "and any inclination of promotions" as a result of her coming forward regarding the needle-stick incident. PFR File, Tab 1 at 5. She also provides a supplemental pleading with an email dated January 18, 2019, from a doctor in the Cardiology Department (the appellant's department), proposing that the appellant's title be changed to "Head of Outpatient Holter and Ambulatory Electrocardiographic Testing," along with a response from another agency employee suggesting that her title should be changed to "Administrative and Clinical Officer to

threatened her]" because the nurse was under the influence of "mind altering drugs." PFR File, Tab 2 at 9. We agree with the administrative judge that the appellant failed to prove she exhausted this personnel action with OSC and failed to nonfrivolously allege she was subjected to a suitability determination. ID at 8 & n.3.

Cardiovascular Stress Testing."[3] PFR File, Tab 2 at 8. Finally, she states that she was told that the promotion would include a "good raise and a new job title" and that she deserved the promotion, and she identifies three individuals she believed "would have input on" her new title. *Id.* at 11. Based on the additional evidence the appellant has provided on review, we conclude that she nonfrivolously alleged that she was subjected to a personnel action under section 2302(a)(2)(A)(ix) regarding a decision concerning pay when she was denied a potential title change and a resulting increase in pay.

¶13     Nevertheless, we still conclude that she failed to nonfrivolously allege that her disclosure of the needle-stick incident and the inadequate investigation (the only disclosure she alleges contributed to this personnel action) contributed to the agency's decision not to grant her the proposed title change and pay increase. PFR File, Tab 1 at 4-5. To satisfy the contributing factor criterion, an appellant need only raise a nonfrivolous allegation that the fact or content of her disclosure or protected activity was one factor that tended to affect the personnel action in any way. *See Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 12 (2016). One way to establish this criterion is the knowledge/timing test, under which an appellant may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude the disclosure or activity was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *see Salerno*, 123 M.S.P.R.

---

[3] The Board will consider evidence submitted on review concerning jurisdiction, even if the evidence was previously available, because jurisdiction may be raised at any time during Board proceedings. *Pirkkala v. Department of Justice*, 123 M.S.P.R. 288, ¶ 5 (2016); *Stoglin v. Department of the Air Force*, 123 M.S.P.R. 163, ¶ 7 (2015), *aff'd*, 640 F. App'x 864 (Fed. Cir. 2016). Because the emails could bear on whether the appellant met her jurisdictional burden of proving that she was subjected to a personnel action in connection with the failure to promote her, we have considered them.

230, ¶ 13. The Board has held that a personnel action taken within approximately 1 to 2 years of an appellant's disclosures satisfies the timing portion of the knowledge/timing test; so, the approximately 1-year period between when the appellant disclosed the needle-stick incident in January 2018 and when she was promised but never received a potential promotion in January 2019 would meet the timing portion of the test. IAF, Tab 12 at 2-3; PFR File, Tab 2 at 11; *see Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 19 (observing that a personnel action taken within approximately 1 to 2 years of the appellant's disclosure satisfies the contributing factor knowledge/timing test); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (same).

¶14      Regarding the knowledge portion of the test, although the appellant has provided some additional context regarding the potential promotion and the discussions related thereto, she still has not identified any individual that she believes was responsible for preventing the promotion from taking place; so, it is unclear whether any of the agency officials allegedly responsible for denying the potential promotion are the same individuals to whom the appellant alleges that she disclosed the needle-stick incident. The Board will not infer knowledge of an appellant's protected disclosures and activities to any agency official based only on a closeness in time between a disclosure or activity and a personnel action and the appellant's conclusory allegation that the action was retaliatory. *See Kerrigan v. Merit Systems Protection Board*, 833 F.3d 1349, 1355 (Fed. Cir. 2016) (noting that, even at the jurisdictional phase when the employee's burden is significantly lower than at the merits stage, it is not appropriate to infer knowledge on the part of any agency officials based only on the closeness in timing and the appellant's conclusory allegation that their actions were done in retaliation). Accordingly, we conclude that the appellant's allegation that the decision not to promote her was in retaliation for her disclosure, without identifying any of the individuals she believes were responsible for that decision, does not meet the nonfrivolous pleading standard required to establish jurisdiction over her IRA appeal. *See El*

*v. Department of Commerce*, [123 M.S.P.R. 76](#), ¶ 6 (2015) (stating that vague, conclusory, unsupported, and pro forma allegations of alleged wrongdoing do not meet the nonfrivolous pleading standard needed to establish the Board's jurisdiction over an IRA appeal), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016); *Keefer v. Department of Agriculture*, [82 M.S.P.R. 687](#), ¶ 10 (1999).

¶15      The knowledge/timing test is not the only way for an appellant to satisfy the contributing factor element.  [5 U.S.C. § 1221](#)(e)(1); *Dorney v Department of the Army*, [117 M.S.P.R. 480](#), ¶ 15 (2012).  If the appellant fails to satisfy that test, the Board must consider other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether those individuals had a desire or motive to retaliate against the appellant. *Dorney*, [117 M.S.P.R. 480](#), ¶ 15.

¶16      For the same reasons discussed above, we also conclude that the appellant failed to make a nonfrivolous allegation that the decision not to promote her was in retaliation for her disclosure, even considering evidence other than knowledge/timing evidence.  Here, even if we are to take at face value the appellant's claim that she was promised a promotion that she subsequently never received, her conclusory allegation that the decision not to promote her was in retaliation for her disclosure, without more, makes it difficult to assess her claim. The additional email the appellant provided on review identifies the name of the proposed title change, but it does not provide any information regarding who was responsible for determining whether to grant the title change, identify any potential motive by any agency official for blocking the promotion, or offer an explanation for when or why the title change never came to fruition.  PFR File, Tab 2 at 8.  Accordingly, we conclude that she also failed to nonfrivolously allege that the decision not to promote her was in retaliation for her protected disclosures, based on nonknowledge/timing evidence, such as the strength or

weakness of the agency's reasons for doing so or whether any agency official involved in the decision had a motive to retaliate against the appellant.

<u>The appellant failed to nonfrivolously allege that her protected activity of filing an OIG complaint was a contributing factor in the agency's decision to take any of the challenged personnel actions.</u>

¶17    The administrative judge found that the appellant failed to nonfrivolously allege that her DHHS OIG complaint was a contributing factor in a personnel action. ID at 17. We agree. The appellant did not allege her DHHS OIG complaint was a contributing factor in the agency's decision to take any of the contested personnel actions based on either the knowledge/timing test or other nonknowledge/timing evidence.

¶18    On review, the appellant states only that she asked for the OIG's contact information from a Human Resources (HR) official and that, after she mailed her complaint to the provided contact (presumably, the DHHS OIG), she received a letter back stating they did not handle situations like hers. PFR File, Tab 1 at 6. She expresses her belief that the HR official intentionally gave her the wrong contact information. *Id.* The appellant has not provided any additional information regarding her OIG complaint or alleged that any official responsible for any of the purported personnel actions, or any other agency management official, was aware of the complaint.

¶19    As such, the appellant has not produced any evidence by which she might be able make a connection between her protected activity and any of the challenged personnel actions. *See, e.g.*, *Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 9 n.5 (2015) (finding that the appellant's assertion that his first- and second-line supervisors were likely among the many people who knew of his disclosure amounted to conjecture unsupported by any record evidence and, thus, did not amount to a nonfrivolous allegation); *Jones v. Department of the Treasury*, 99 M.S.P.R. 479, ¶ 8 (2005) (finding that an appellant's insinuation that an individual might have known of his prior

whistleblowing activity amounted to unsubstantiated speculation, not a nonfrivolous allegation of jurisdiction); 5 C.F.R. § 1201.4(s) (defining a nonfrivolous allegation generally as an allegation that is more than conclusory).

¶20        Thus, even if the appellant established that she engaged in protected activity when she filed a complaint with the OIG for DHHS that was subsequently forwarded to her own agency's OIG, we nevertheless conclude that she failed to make a nonfrivolous allegation that it was a contributing factor in any of the challenged personnel actions based on either the knowledge/timing test or nonknowledge/timing evidence.

The appellant nonfrivolously alleged that she was subjected to a hostile work environment in retaliation for her disclosure of the needle-stick incident and the gun violence threat.

¶21        We turn now to the issue of whether the appellant nonfrivolously alleged that she suffered a personnel action when she was subjected to a hostile work environment, in light of additional details and documentation the appellant has provided on review.  The administrative judge considered as separate, alleged personnel actions the appellant's claims that (1) she was subjected to a hostile work environment, and (2) her duties and working conditions were changed.  We find that this interpretation is an overly narrow view of the appellant's allegations.

¶22        Although the appellant has not challenged the administrative judge's characterization of these personnel actions on review, we conclude that there is no basis to distinguish a "hostile work environment" from a change in duties and working conditions.  Both of these terms are different ways of framing the personnel action identified in 5 U.S.C. § 2302(a)(2)(A)(xii) as any "significant change in duties, responsibilities, or working conditions."  *Skarada*, 2022 MSPB 17, ¶¶ 14-16.  By parsing the hostile work environment claim into two, separate personnel actions, the administrative judge may have unintentionally diminished the seriousness of the appellant's claims.  *See Hamley v. Department of the*

*Interior*, [122 M.S.P.R. 290](#), ¶ 7 (2015) (observing, in the title VII context, that hostile work environment claims are different from discrete acts of discrimination or retaliation because, by their nature, they involve repeated conduct, a single incident of which may not be actionable on its own).

¶23      On review, the appellant reasserts that actions by various agency officials amounted to a hostile work environment that continued until at least June 2020. PFR File, Tab 1 at 3-7, Tab 2 at 9-12. Taking the appellant's pleadings below and on review together, and treating her hostile work environment claim as one, rather than two, personnel actions, the appellant's allegations appear quite serious. IAF, Tab 7 at 7-9, Tab 12 at 8-9, 44-46; PFR File, Tab 2 at 9-12.

¶24      To prevail on an allegation concerning a hostile work environment, an employee must show that the complained-of conduct was severe or pervasive enough to create a working environment that a reasonable person would find hostile or abusive. *See, e.g.*, *Godesky v. Department of Health & Human Services*, [101 M.S.P.R. 280](#), ¶ 14 n.* (2006) (finding that an appellant's allegations did not establish hostile work environment discrimination under title VII because he did not show that the complained-of conduct was sufficiently severe or pervasive to create an objectively hostile or abusive work environment); *see also Burlington Industries, Inc. v. Ellerth*, [524 U.S. 742](#), 754 (1998) (finding that a hostile work environment under title VII requires a showing of severe or pervasive conduct). In determining whether an appellant has been subjected to a hostile work environment sufficient to rise to the level of a personnel action, the Board must consider the alleged agency actions both collectively and individually. *Skarada*, [2022 MSPB 17](#), ¶ 16.

¶25      The Board has found that undermining the supervisory authority of an employee may constitute a significant change in duties, responsibilities, and working conditions. *McDonnell v. Department of Agriculture*, [108 M.S.P.R. 443](#), ¶ 23 (2008). Further, the Board also has found that an appellant nonfrivolously alleged he was subjected to a personnel action when an agency excluded him

from meetings and conversations, subjected him to multiple investigations, accused him of fabricating data violating the Privacy Act, refused his request for a review of his position for possible upgrade, yelled at him on three occasions, and failed to provide him the support and guidance needed to successfully perform his duties. *Skarada*, 2022 MSPB 17, ¶ 18.

¶26     The appellant, here, alleges that after a nurse threatened her with gun violence on February 23, 2018, the agency immediately placed her department on lockdown, and on February 26, 2018, an agency official called all department staff to a meeting to discuss the situation. IAF, Tab 7 at 8; PFR File, Tab 2 at 9. However, an individual she identifies as the "Lead in Cardio," whom the appellant alleges was a friend of the nurse that threatened her, refused to go to the meeting, stating to the appellant in front of others, "all this shit is your fault." IAF, Tab 7 at 8, 10, Tab 12 at 57-59; PFR File, Tab 2 at 9. Despite a continuing instruction that the department was to be kept locked, this same individual "continued to unlock the doors," causing the appellant and her coworkers to fear that the nurse who threatened the appellant would "come in the clinic and shoot us all." PFR File, Tab 2 at 9-10. On one occasion, after the appellant locked the doors after the Cardio Lead entered the department on March 2, 2018, the Cardio Lead allegedly responded, "you are the stupidest bitch I have ever seen, if you hadn't of [sic] reported [the nurse] for the needle stick, none of this would be happening." PFR File, Tab 2 at 10. Not until February 19, 2019, almost a year after the agency put in place the requirement of locking the appellant's department, did the department install a door with a code lock, apparently resolving the concerns caused by the Cardio Lead leaving the door unlocked. PFR File, Tab 2 at 11.

¶27     Further, the appellant reported that "every few days" the Cardio Lead continued to call her a "bitch and other things," through May 2018. IAF, Tab 7 at 8, Tab 12 at 8. According to the appellant, despite the agency's awareness of the Cardio Lead's hostility, it did not take sufficient action to correct the situation.

PFR File, Tab 2 at 10. While a doctor expressed to the appellant that he was frustrated by the lack of action from hospital administration, the Director of Nursing told the appellant to "get over it, let it go, no one died," and laughed. *Id.* For the first time on review, the appellant also provides emails the former Chief of Cardiology sent to the Chief of Medicine and the VA Chief of Police expressing concerns about the "toxic environment" in the Cardiology department and the alleged "behind the back, behind the scenes" campaign against the appellant. PFR File, Tab 1 at 3-4, Tab 2 at 2-5.

¶28        In sum, as described by the appellant, after a threat to her life by a coworker, for almost a year the agency allowed another coworker to undermine security efforts designed to protect her from the threat, made light of the incident, and permitted her to be insulted on a regular basis for reporting the threat. The appellant's allegations here are at least as serious as those in *McDonnell* and *Skarada* and rise to the level of a nonfrivolous allegation of hostile working environment sufficient to constitute a significant change in her duties or working conditions. *See Skarada*, 2022 MSPB 17, ¶¶ 15-18.

¶29        Having determined that the appellant nonfrivolously alleged that she was subjected to a personnel action in connection with her hostile work environment claim, we must now consider whether she nonfrivolously alleged that her protected disclosures of the needle-stick incident and the gun violence threat were contributing factors in the creation of the hostile work environment. *Skarada*, 2022 MSPB 17, ¶¶ 16, 19. As previously noted, the appellant disclosed the needle-stick incident to agency officials in January 2018 and the gun violence threat in February 2018, and she alleges that the events that caused the hostile work environment began shortly thereafter in late January 2018 and continued until at least February 2019, when the agency finally addressed her concerns regarding the gun threat and inadequate security. IAF, Tab 7 at 7-8, 10, Tab 12 at 50-54, 57-59; PFR File, Tab 2 at 9-11. Thus, the appellant has met the timing

prong of the knowledge/timing test.  *Skarada*, 2022 MSPB 17, ¶ 19; *Mastrullo*, 123 M.S.P.R. 110, ¶ 21.

¶30        Regarding the knowledge portion of the test, although the appellant does not clearly identify which of the management officials to whom she disclosed the needle-stick and gun threat incidents were within her supervisory chain, she does allege that she disclosed the needle-stick incident to several supervisors within her department, including the Chief of Cardiology, the Cardiology Supervisor, and the Nurse Supervisor, and she provides copies of VA Police incident reports reflecting the same.  IAF, Tab 12 at 2, 13, 20-31.  She also appears to allege that higher-level managers, including the Acting Director of the facility, the Director of Nursing, and the Nursing Supervisor, were all aware of the gun threat incident disclosure.  IAF, Tab 7 at 10, Tab 10 at 2-3; PFR File, Tab 2 at 9-10.  Similarly, she alleges that high-level agency supervisors, including the Chief Doctor and Nurse Supervisor of her department and the Chief of Medicine for her hospital, were aware of at least some of the incidents that contributed to the hostile work environment, including the repeated verbal harassment by the "Lead in Cardio" and management's failure to enforce the door locking safety protocols, and that management nevertheless failed to adequately address her concerns or, in some cases, laughed them off.  IAF, Tab 12 at 48-51, 54, 57-59; PFR File, Tab 2 at 2-7, 9-12 (stating that the Director of Nursing laughed at the appellant when she complained about harassment by the" Lead in Cardio" and that another doctor informed her that management was aware of the harassment but would not do anything about it).

¶31        Based on the foregoing, we conclude that, under the knowledge/timing test, the appellant has made a nonfrivolous allegation that her January 2018 disclosures concerning the needle-stick incident, and the related investigation, and the February 2018 gun violence threat, were a contributing factor in the hostile work environment that agency management permitted, unabated, from January 2018 onward, resulting in a significant change in the appellant's duties,

responsibilities, and working conditions.  *See Skarada*, 2022 MSPB 17, ¶ 19.  To the extent the appellant has raised what appear to be additional incidents in support of her hostile work environment claim on review, *e.g.*, PFR File, Tab 2 at 12, the administrative judge should address on remand the issue of the Board's jurisdiction over those incidents and, if appropriate, the merits.

The appeal must be remanded for adjudication on the merits.

¶32      In summary, because the appellant proved that she exhausted her administrative remedies as set forth above and made a nonfrivolous allegation that she made protected disclosures in connection with the needle-stick incident and the gun violence threat that were a contributing factor in the creation of the hostile work environment, she has established jurisdiction over her appeal and is entitled to the merits hearing that she requested.  IAF, Tab 1 at 1; *see Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶¶ 6-8 (2011).  On remand, the administrative judge shall afford the appellant an opportunity to prove by preponderant evidence that the January 2018 needle-stick and February 2018 gun threat disclosures were a contributing factor in a hostile work environment.  *See Runstrom v. Department of Veterans Affairs*, 123 M.S.P.R. 169, ¶ 12 (2016).  If the administrative judge finds that the appellant proved her case in chief, she must determine whether the agency has proved by clear and convincing evidence that it would have taken these same personnel actions even in the absence of the appellant's disclosures.  *See id.*; 5 U.S.C. § 1221(e).  Because the appellant has requested a hearing, she is entitled to one.  *See Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 22 (2016) (explaining that while an appellant is not entitled to a jurisdictional hearing in an IRA appeal, he is entitled to a hearing on the merits once he establishes jurisdiction).

## ORDER

¶33     For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                    /s/ for
                                  _____
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.