# United States Court of Appeals for the Federal Circuit

---

**PHILIP J. KERRIGAN,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2015-3200

---

Petition for review of the Merit Systems Protection Board in No. SF-1221-14-0742-W-1.

---

Decided: August 17, 2016

---

PAUL DAVID MARGOLIS, Jenner & Block LLP, Chicago, IL, argued for petitioner. Also represented by LISA MARIE SCHOEDEL, JONATHON STUDER.

KATHERINE MICHELLE SMITH, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, argued for respondent. Also represented by BRYAN G. POLISUK.

---

Before PROST, *Chief Judge,* BRYSON and STOLL, *Circuit Judges.*

PROST, *Chief Judge*.

Philip Kerrigan appeals the final decision of the Merit Systems Protection Board ("Board" or "MSPB") dismissing, for lack of jurisdiction, his claim that his workers' compensation benefits were improperly terminated in retaliation for protected whistleblowing activity. *See Kerrigan v. Dep't of Labor*, No. SF-1221-14-0742-W-1, 2015 WL 3622799 (M.S.P.B. June 11, 2015). While we disagree with the Board that 5 U.S.C. § 8128(b) bars its review of Mr. Kerrigan's appeal, we conclude that Mr. Kerrigan failed to make a nonfrivolous allegation that his protected disclosure was a contributing factor in the agency's action, and therefore affirm.

I

From August 1985 until May 1986, Mr. Kerrigan held a temporary appointment as a carpentry worker with the Department of the Navy's Public Works Center in San Diego, California. During his appointment, he injured his back while at work and applied for, and was granted, workers' compensation benefits by the Department of Labor's ("DOL's") Office of Workers Compensation ("OWCP"). Mr. Kerrigan received these benefits without incident for many years.

Beginning in 1993, Mr. Kerrigan began raising concerns regarding the administration of his benefits. Over the next several years, Mr. Kerrigan's claims included a request to be treated by his choice of physician, Dr. Webber; requests for a determination of his wage-earning capacity, a lump sum settlement, and a schedule award; and a claim for an emotional condition.

In the ensuing years, the OWCP took a number of actions in adjudicating Mr. Kerrigan's claims. In 1994, the OWCP indicated it would refer Mr. Kerrigan for vocational training (though it is unclear whether he was actually referred at that time). In 1996, the OWCP denied Mr.

Kerrigan's request to see Dr. Webber, which was affirmed by its reviewing board within DOL, the Employees Compensation Appeals Board ("ECAB"), in 1998. Following that decision, the OWCP referred Mr. Kerrigan for an evaluation with an orthopedic surgeon. In 2001, that surgeon returned two reports and the opinion that Mr. Kerrigan could return to full-time work, with restrictions. Also in 2001—and particularly relevant here, on December 18, 2001—the OWCP referred Mr. Kerrigan for vocational rehabilitation. Mr. Kerrigan refused to attend the training and, on March 19, 2002, the OWCP notified Mr. Kerrigan that his benefits were being reduced to zero based on his refusal to participate in the training. That decision was affirmed by ECAB in 2003.

Of these actions, Mr. Kerrigan took particular issue with the denial of his request to see Dr. Webber. On November 21, 2001, Mr. Kerrigan sent a letter to the DOL's Office of Inspector General alleging that the denial was based on illegal actions by DOL employees—namely, that the OWCP and ECAB persons who had denied his request had done so based on a physician election form that they either falsified, destroyed, or both. The Office of Inspector General ("OIG") elected not to investigate, though it did forward the letter on to the OWCP. A date-stamp indicates that OWCP received the forwarded letter on December 18, 2001, the same day OWCP referred him to vocational training.

Following OIG's decision not to investigate, Mr. Kerrigan pursued, over the next several years, two actions in district court. One was brought against the DOL for illegal termination of benefits; the other was brought against the physician who reviewed his medical records during the administrative proceedings. Both were ultimately dismissed.

In 2013, Mr. Kerrigan filed a complaint with the U.S. Office of Special Counsel. That office chose not to investi-

gate his claims but, construing his complaint as an allegation of reprisal for whistleblowing activity, referred him to the MSPB.

In 2014, Mr. Kerrigan initiated this individual right of action appeal before the MSPB. His initial submissions alleged retaliatory termination of benefits following his November 21, 2001 letter to DOL alleging document forgery and destruction in denying his request to see Dr. Webber. The agency filed a motion to dismiss for lack of jurisdiction, arguing, inter alia, that Mr. Kerrigan's conclusory allegations failed to comprise a nonfrivolous claim under the Whistleblower Protection Act. The administrative judge ordered Mr. Kerrigan to make the requisite jurisdictional showing, explaining that he must make "a detailed factual allegation that . . . agency officials responsible for the personnel action were aware of [his] disclosure . . . and acted within such time that a reasonable person could find that the disclosure . . . contributed to the action." *Kerrigan v. Dep't of Labor*, SF-1221-14-0742-W-1, at *4 (M.S.P.B. Oct. 24, 2014). Mr. Kerrigan responded with a number of documents and a sworn declaration in which he repeated his allegations of retaliatory action by the DOL. J.A. 190-94.

The administrative judge then dismissed Mr. Kerrigan's appeal for lack of jurisdiction. The administrative judge held that the Whistleblower Protection Act only covers actions taken by an agency concerning its *own* employees and, because Mr. Kerrigan was never an employee with the DOL, jurisdiction was lacking. J.A. 238-39. Mr. Kerrigan petitioned for review, and the Board agreed that jurisdiction was lacking, but for different reasons. The Board held that it had no jurisdiction because Mr. Kerrigan's challenge was a challenge to the termination of his benefits, and 5 U.S.C. § 8128(b) provides that benefits determinations are within the exclusive jurisdiction of the DOL and are unreviewable. *Kerrigan*, 2015 WL 3622799, at *547-49. The Board also

noted that, even if jurisdiction were not barred under § 8128(b), Mr. Kerrigan had failed to nonfrivolously allege that his protected disclosures were a contributing factor in the agency's decision to terminate his benefits. *Id.* at *549 n.2.

Mr. Kerrigan appealed to us. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(B). Whether the Board has jurisdiction over a particular matter is a question of law that this court reviews de novo. *Herman v. Dep't of Justice*, 193 F.3d 1375, 1378 (Fed. Cir. 1999).

## II

We begin with the primary rationale of the Board's decision—that 5 U.S.C. § 8128(b) precludes the Board from exercising jurisdiction over Mr. Kerrigan's appeal. On this point, we hold that the Board erred.

Under the Federal Employees' Compensation Act ("FECA"), decisions from the DOL on whether to allow or deny benefits are protected from further review by 5 U.S.C. § 8128(b). Specifically, § 8128(b) of FECA provides that:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

We have previously commented on the "strong door-closing language" of this provision. *Pueschel v. United States*, 297 F.3d 1371, 1374 (Fed. Cir. 2002). But by its plain terms, § 8128(b) applies only to actions by the Secretary or his designee "in allowing or denying a pay-

ment." It does not close the door on review of all decisions that may overlap or touch on a DOL benefits determination. For example, in *Minor v. Merit Systems Protection Board*, 819 F.2d 280, 281-82 (Fed. Cir. 1987), a petitioner who had been receiving workers' compensation benefits was both removed by her employing agency and denied further benefits by OWCP after it came to light that her injury claim had been false. In her appeal to us seeking restoration, we explained that § 8128(b)'s bar "obviously relates only to the Labor Department's decisions on the making or denying of compensation awards" and does not bar the Board from otherwise "acting within its own separate statutory sphere" of authority. *Id.* Thus, "even though much of the same facts and evidence" went into both the benefits determination and the removal determination, the two were separate legal questions, the latter of which was within the Board's jurisdiction. *Id.*[1]

The same principle is true here. Mr. Kerrigan's complaint in this case is that the DOL's actions—referring him to vocational training and then terminating his benefits for failure to attend—were done in retaliation for his letter alleging forgery and destruction of evidence in the earlier denial of his request to see Dr. Webber. The question of whether the DOL retaliated against Mr. Kerrigan in reprisal for whistleblowing activity is a different one than whether the DOL correctly terminated his benefits for failure to attend vocational training. Section 8128(b) only precludes the Board's review of the

---

[1]    We cited with approval the Board's decision in *Miller v. U.S. Postal Service*, 26 M.S.P.R. 210, 213 (1995), which likewise held that "[w]hile the issue of [an employee's] entitlement to FECA benefits is within the exclusive jurisdiction of the OWCP, the issue of the [employee's] fraudulent conduct in those proceedings is not."

latter. While it is true that this case differs from *Minor* in that the appellant here seeks review of a decision by DOL rather than his employing agency, that distinction does not warrant a different result. In both cases, the Board's jurisdiction stems from challenges that are separate and distinct from a simple appeal of benefits denial, and thus are not barred by § 8128(b).

## III

Section 8128(b) was not the only ground upon which the Board dismissed Mr. Kerrigan's action, however. In a footnote of its decision, the Board also provided an alternative rationale for dismissal: it held that Mr. Kerrigan failed to nonfrivolously allege that his protected disclosure was a contributing factor in the agency's action. Specifically, the Board concluded that Mr. Kerrigan "failed to allege that the official who made the decision to terminate his OWCP compensation benefits had any knowledge of his protected disclosures or was influenced by someone who did." *Kerrigan*, 2015 WL 3622799, at *549 n.2. On this point, we agree with the Board.

To establish Board jurisdiction over individual right of action cases, the appellant must make "non-frivolous allegations" that he engaged in whistleblowing activity by making a protected disclosure, and that the protected disclosure "was a contributing factor in the agency's decision to take or fail to take a personnel action." *Cahill v. Merit Sys. Prot. Bd.*, 821 F.3d 1370, 1373 (Fed. Cir. 2016). The statute, 5 U.S.C. § 1221(e)(1), expressly addresses how the "contributing factor" element of the whistleblower claim can be established. It provides that:

> The employee may demonstrate that the disclosure or protected activity was a contributing factor in the personnel action through circumstantial evidence that—

(A) the official taking the personnel action knew of the disclosure or protected activity; and

(B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action.

5 U.S.C. § 1221(e)(1).

Here, Mr. Kerrigan has certainly shown a closeness in timing between the alleged protected disclosure and the personnel action, as described in subsection (B). His letter alleging illegal actions by the OWCP and ECAB was sent to the DOL's Office of Inspector General on November 21, 2001, and forwarded on to the OWCP on December 18, 2001. On that same day, December 18, 2001, the OWCP referred him to vocational training. A few months later, on March 19, 2002, the OWCP reduced his benefits to zero for failure to attend the training. We agree with Mr. Kerrigan that, from a timing perspective, the adverse personnel actions came right on the heels of his accusatory letter.

But closeness in timing, in and of itself, is not sufficient as a nonfrivolous allegation that the protected disclosure was a contributing factor to the adverse personnel action. In addition to closeness in timing, the statute also describes a knowledge component: "that the official taking the personnel action *knew* of the disclosure or protected activity." 5 U.S.C. § 1221(e)(1) (emphasis added). This knowledge factor can be determinative on the question of the Board's jurisdiction. *See Cahill*, 821 F.3d at 1376 (reversing the Board's finding that the contributory factor had not been sufficiently alleged when "the only disputed issue [was] whether any of the agency officials taking the challenged personnel actions *knew* of the March 2012 disclosure") (emphasis added). It is here, at the knowledge component, where Mr. Kerrigan has failed to make a nonfrivolous allegation.

Nowhere in Mr. Kerrigan's papers does he allege that his November 21, 2001 letter was known to the OWCP persons who referred him to vocational training and terminated his benefits for failure to attend. Rather, the most Mr. Kerrigan has shown is that *someone* within OWCP was aware of his letter on the same day he was referred to vocational training. But the generalized assertion that *someone* within the agency—without any accompanying allegations as to the size, composition, or structure of that agency—is insufficient to establish that the specific agency official taking the personnel action *knew* of the disclosure or protected activity. *Cf. Cahill*, 821 F.3d at 1374-75 (finding jurisdiction when appellant alleged both knowledge and action by agency personnel whom he identified by positions, when the record reflected those positions were occupied by only one person).

That is not to say that, at the jurisdictional stage, an appellant must *prove* knowledge by the acting official. We have previously explained that "[a]t the jurisdictional threshold, . . . the employee's burden is significantly lower" than at the merits stage. *Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 909 (Fed. Cir. 2008). To pass the jurisdictional hurdle, we require only that an appellant at least have made *non-frivolous allegations* that the officials who took the personnel action had knowledge of the protected disclosure. *See id.* at 912 n.3 (finding jurisdiction based on appellant's affidavit stating that the acting official knew of her protected disclosure). Here, Mr. Kerrigan has made no allegations that the specific OWCP persons who referred him to training and terminated his benefits knew of his November 21, 2001 letter. And we do not accept his invitation to *infer* their knowledge based

only on a closeness in timing and his conclusory allegation that their actions were done "in retaliation."[2]

The record of this case makes us particularly disinclined to infer knowledge from closeness in timing. Here, the OWCP's referral to vocational training was not a sudden occurrence untethered in time to anything but Mr. Kerrigan's letter. To the contrary, the OWCP's referral was just the latest in a long list of many actions that it had been taking in efforts to adjudicate Mr. Kerrigan's benefits claims. Most notably, the referral for training came just a few months after an orthopedic surgeon recommended that Mr. Kerrigan could return to full-time work. It is therefore not, as Mr. Kerrigan contends, as if the *only* basis for the agency's referral *must* have been knowledge of his letter. In these circumstances, where

---

[2] At oral argument, Mr. Kerrigan focused for the first time on the sworn declaration that he submitted in response to the administrative judge's order to make the requisite jurisdictional showing. *See* J.A. 190-94. We find this declaration both late to the table and insufficient to satisfy the knowledge component. Although the declaration includes a long list of names of OWCP personnel who, he says, "have been notified in person or by mail regarding fraud or will be shown to have perpetrated fraud against appellant with reckless and willful disregard for any harm that has resulted from their individual and/or collective illegal conduct," J.A. 191, the statement is written in the disjunctive, asserting that the identified people *either* knew of the disclosures *or* perpetrated fraud against him—but not both. Further, like most of Mr. Kerrigan's filings in the record below, the declaration seems focused more on his complaint about the allegedly forged or destroyed physician election form used to deny his request to see Dr. Webber, not the termination of benefits that is the focus of this appeal.

there are other plausible, indeed likely, reasons for the agency's action, we will not infer knowledge from closeness in timing.

For these reasons, we conclude that Mr. Kerrigan failed to make a nonfrivolous allegation that the OWCP persons who referred him to vocational training and terminated his benefits *knew* of his November 21, 2001 letter. We therefore affirm the Board's dismissal for lack of jurisdiction.

**AFFIRMED**