# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| FREDERICK SCHULER,<br>_____ Appellant, | DOCKET NUMBER<br>DE-1221-20-0171-W-1 |
| v. | |
| DEPARTMENT OF HOUSING AND<br>___ URBAN DEVELOPMENT,<br>_____ Agency. | DATE: August 6, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Frederick Schuler</u>, Aurora, Colorado, pro se.

<u>Colin J. Ratterman</u> and <u>Nicole A. Allard</u>, Esquire, Denver, Colorado, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

*Member Kerner recused himself and did not participate in the adjudication of this appeal

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. _See_ 5 C.F.R. § 1201.117(c).

Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to analyze the appellant's argument that his disclosures regarding agency policy evidence gross mismanagement, an abuse of authority, and a gross waste of funds, to supplement the contributing factor analysis, and to address a disclosure raised for the first time on review, we AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

The appellant is a Review Appraiser for the Processing and Underwriting Division (PUD) of the agency's Denver Homeownership Center in Denver, Colorado. Initial Appeal File (IAF), Tab 1 at 1, Tab 29 at 23. His duties include responding to service request calls from lenders, borrowers, and appraisers with questions about Federal Housing Authority (FHA) policy or needing assistance with FHA systems. IAF, Tab 9 at 6, Tab 29 at 20, 23. Some of these requests come electronically from a call center operated by a contractor via the agency's Unified Service Desk (USD) system, in which a service request is called a Client Relationship Management (CRM) inquiry. IAF, Tab 29 at 20. Unless a caller has

requested to speak with a specific staff member, the agency assigns CRM inquiries to PUD staff on a rotating basis. *Id.*

According to the appellant, over the course of several years he made "hundreds of disclosures . . . evidenc[ing] misconduct or mismanagement" to various supervisors, as well as the Office of the Inspector General (OIG), the Office of Special Counsel (OSC), and the agency's Equal Employment Opportunity office (EEO). IAF, Tab 9 at 5. One type of disclosure concerned the agency's lack of written policy determinations and certain specific policy guidance in its Handbook 4000.1, FHA Single Family Housing Policy Handbook, Condominium Project Approval. IAF, Tab 9 at 9. According to the appellant, this lack of guidance caused the agency to rely on questionable appraisals in issuing mortgages that could cost the agency "hundreds of billions of dollars, should the [United States] economy suffer another crash like the 2008 Housing Crisis." *Id.* at 5.

Another type of disclosure concerned what the appellant identified as "harassing and abusive" CRM inquiries from the public asking Housing and Urban Development (HUD) appraisers like him "to provide false HUD policy determinations and property eligibility determinations." *Id.* at 6. He alleged that agency employees or management were in collusion with these "troll" callers based on the "topics, frequency, timing, tone and intensity" of the calls compared to internal agency discussions. *Id.* at 8-9.

On July 11, 2018, the appellant's first-level supervisor issued the appellant a letter of reprimand for disruptive conduct for his allegedly rude and condescending treatment of external customers. IAF, Tab 10 at 420-22. Within 2 weeks after the letter was issued, the appellant submitted a hotline report to the agency's OIG. IAF, Tab 23 at 57-58. On September 25, 2019, the appellant's first-level supervisor proposed to suspend the appellant for 14 days based on charges of conduct unbecoming a Federal employee and failure to follow instructions. IAF, Tab 9 at 41-55. After the appellant responded, the PUD

Director, who was the deciding official, sustained both charges and affirmed the 14-day suspension. *Id.* at 32-40.

Prior to receiving the decision on his 14-day suspension, the appellant filed a complaint with OSC. IAF, Tab 8 at 12, Tab 9 at 18-19, Tab 21 at 2, 86-115. He alleged in his complaint, as later amended, that in reprisal for protected disclosures, the agency issued him the letter of reprimand and 14-day suspension. IAF, Tab 9 at 93-101. On December 26, 2019, OSC informed the appellant that it had closed its inquiry into his complaint. *Id.* at 101. He subsequently filed an IRA appeal with the Board. IAF, Tab 1.

The administrative judge advised the appellant of his jurisdictional burden and ordered him to provide evidence and information related to his claim. IAF, Tab 3. Both parties responded. IAF, Tabs 9-24, 27-30. The administrative judge then issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 31, Initial Decision (ID) at 1-2.

The administrative judge assumed without making a finding that the appellant exhausted his administrative remedies with OSC. ID at 4. The administrative judge then found that the appellant failed to nonfrivolously allege that his disclosures about unclear agency policies and harassing behavior on the call system were protected under 5 U.S.C. § 2302(b)(8). ID at 5, 8. Specifically, he reasoned that the appellant's complaints about the lack of clear policy were policy disagreements, which are not protected. ID at 8-10. He then found that the disclosures about harassment by CRM callers were similarly not protected because the alleged wrongdoing was perpetrated by private callers, not Government employees. ID at 10-12. To the extent the appellant alleged that the agency colluded with these callers, the administrative judge found that the appellant failed to nonfrivolously allege that he reasonably believed the agency was behind the calls. ID at 12. The administrative judge also found that the appellant failed to nonfrivolously allege that his EEO complaint was a protected activity. ID at 13. However, he determined that the appellant nonfrivolously

alleged that his OIG and OSC activity was protected under 5 U.S.C. § 2302(b)(9) (C). *Id.* However, he found that the appellant failed to nonfrivolously allege that any agency employees involved in his reprimand and 14-day suspension had knowledge of such protected activity, and thus, the appellant failed to nonfrivolously allege that the activities were a contributing factor in his personnel actions. *Id.*

The appellant has filed a petition for review, disagreeing with the finding that he failed to nonfrivolously allege that he made protected disclosures. Petition for Review (PFR) File, Tab 3 at 9-19. He also disagrees that he failed to nonfrivolously allege that the agency officials involved in the alleged personnel actions had knowledge of his OIG report and OSC complaint. PFR File, Tab 3 at 19-20. He attaches new documents on review. *Id.* at 22-37. The agency has responded to the appellant's petition for review, and the appellant has replied to its response. PFR File, Tabs 5, 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), the Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that: (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). The administrative judge below assumed without finding that the appellant exhausted his administrative remedies with OSC. ID at 4. The parties do not challenge this on review. Because we agree with the administrative judge that the appellant failed to nonfrivolously allege that he made protected disclosures or engaged in protected activities that were contributing factors in the

alleged personnel actions, we also find it unnecessary to address the exhaustion issue.

<u>The administrative judge properly determined that the appellant failed to nonfrivolously allege that he made protected disclosures.</u>

The appellant on review challenges the administrative judge's finding that he failed to nonfrivolously allege that he made protected disclosures. PFR File, Tab 3 at 9-19. We are unpersuaded.

Protected whistleblowing occurs when an appellant makes a disclosure that he reasonably believes evidences any violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. 5 U.S.C. § 2302(b)(8); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 & n.3 (2013). The proper test for determining whether an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced a violation of law, rule, or regulation, or one of the other conditions set forth in 5 U.S.C. § 2302(b)(8). *Mudd*, 120 M.S.P.R. 365, ¶ 5. In the context of an IRA appeal, a nonfrivolous allegation is an allegation of "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1368 (Fed. Cir. 2020).[2]

[2] After the initial decision was issued in this case, the U.S. Court of Appeals for the Federal Circuit issued its decision in *Hessami*, 979 F.3d 1362. In *Hessami*, the court clarified that at the jurisdictional stage, the Board cannot consider the agency's evidence to the extent it contradicts the appellant's nonfrivolous allegations that he made a protected disclosure that contributed to a personnel action. *Id.* at 1367-68; *see Ferdon v. U.S. Postal Service*, 60 M.S.P.R. 325, 329 (1994) (explaining that in determining whether the appellant has made a nonfrivolous allegation of jurisdiction entitling him to a hearing, the administrative judge may consider the agency's documentary submissions; however, to the extent that the agency's evidence constitutes mere factual contradiction of the appellant's otherwise adequate prima facie showing of jurisdiction, the administrative judge may not weigh evidence and resolve conflicting assertions of the parties and the agency's evidence may not be dispositive). Because the administrative judge did not improperly weigh the evidence in making his

*The agency's alleged lack of clear policies.*

The administrative judge found that the appellant's disclosures regarding the lack of clear policy guidance were communications about policy decisions that did not otherwise evidence wrongdoing covered by the WPEA. ID at 10. The appellant repeatedly argues on review that his disclosures evidenced gross mismanagement. PFR File, Tab 3 at 9-15. The statutory protection for whistleblowers is not a weapon in arguments over policy or a shield for insubordinate conduct. *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015). Even under the expanded protections afforded to whistleblowers under the WPEA, general philosophical or policy disagreements with agency decisions or actions are not protected unless they separately constitute a protected disclosure of one of the categories of wrongdoing listed in section 2302(b)(8)(A). *Id.* The appellant here alleges that the agency's lack of clear policy guidelines confuses the public and enables bad actors to engage in fraud by "elicit[ing] [from agency staff] arbitrary, capricious interpretations via manipulations, deception, harassment, bullying, and badgering of Agency staff." PFR File, Tab 6 at 10. These alleged disclosures represent general philosophical and policy disagreements with the agency's decisions. *See Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 11 (2016) (considering an alleged disclosure that training should be funded at the headquarters, rather than regional, level as a policy dispute that was not protected); *Webb*, 122 M.S.P.R. 248, ¶¶ 2, 7-10 (agreeing with an administrative judge that an appellant's position paper regarding the proposed restructuring of an agency subdivision was not a protected disclosure but instead a policy disagreement).

To the extent the appellant argues that he reasonably believed his disclosures evidenced gross mismanagement, we are not persuaded. The

---

jurisdictional determinations, we discern no basis to modify his analysis based on *Hessami*.

administrative judge acknowledged this argument below but did not specifically address it. ID at 5. We do so now.

Gross mismanagement means a management action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission. *White v. Department of the Air Force*, 63 M.S.P.R. 90, 95 (1994). Complaints of inefficient or ineffective conduct that wastes employee time does not meet this standard. *Cassidy v. Department of Justice*, 118 M.S.P.R. 74, ¶¶ 6, 8 (2012); *see Wood v. Department of Defense*, 100 M.S.P.R. 133, ¶ 11 (2005) (finding gross mismanagement is more than de minimis wrongdoing or negligence). Although the appellant's suggested policy changes may increase clarity to customers and save the agency money, he has not alleged that the lack of clear policies has a significant impact on the agency's ability to accomplish its mission. Accordingly, the appellant has failed to nonfrivolously allege that he reasonably believed any disclosure of the agency's failure to mitigate the harassing calls evidenced gross mismanagement.

To the extent the appellant argues that the lack of clear policies was an abuse of authority, we are similarly unpersuaded. IAF, Tab 9 at 4; PFR File, Tab 3 at 5-7, 15. The administrative judge acknowledged the appellant's claim below but did not specifically address it. ID at 5. Accordingly, we modify the initial decision to do so.

Abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons. *Mc Corcle v. Department of Agriculture*, 98 M.S.P.R. 363, ¶ 24 (2005). Although the appellant argues that the lack of clear policies results in arbitrary and capricious decisions, he has not alleged that he reasonably believed the agency created its allegedly deficient policies in an arbitrary and capricious manner to adversely affect anyone's rights or for personal gain or advantage. Rather his allegations of abuse of authority are fundamentally his own personal

complaints about how to structure the agency's policies. *See id.*, ¶¶ 20, 24 (concluding that an appellant's allegations were fundamentally his own personal complaints and grievances about how he was treated by the agency or mere debatable disagreements with the agency's policy decisions and, therefore, did not constitute a nonfrivolous allegation of a protected disclosure).

The appellant additionally appears to argue on review that the lack of clear policies led to wasted staff hours addressing repeated questions, which amounted to a gross waste of funds. PFR File, Tab 3 at 10. The administrative judge did not specifically address this argument. Therefore, we do so here.

A gross waste of funds is a more than debatable expenditure significantly out of proportion to the benefit reasonably expected to accrue to the Government. *Van Ee v. Environmental Protection Agency*, 64 M.S.P.R. 693, 698 (1994). The waste of funds disclosed here is effectively the agency's staff hours responding to inquiries from the public. However, such an alleged loss of time does not amount to a gross waste of funds. *Cassidy*, 118 M.S.P.R. 74, ¶ 8. Accordingly, we find that the appellant has failed to nonfrivolously allege that he reasonably believed he disclosed a gross waste of funds.[3]

The appellant argues that he made hundreds of complaints about the lack of coherent policies. PFR File, Tab 3 at 6, 11. However, we find that the sheer volume of complaints does not render them protected. *See Hanse v. Merit Systems Protection Board*, 746 F. App'x 976, 983 (Fed. Cir. 2018) (finding that a petitioner failed to support his theory that "aggregating several disclosures related

---

[3] To the extent the appellant alleged that the agency committed a gross waste of funds by insuring risky mortgages, we are similarly unpersuaded. IAF, Tab 9 at 5; PFR File, Tab 3 at 9-10. The appellant has not alleged that any loss of funds actually occurred, but rather that a large loss *could* occur should the United States suffer another economic crash like the 2008 housing crisis. IAF, Tab 9 at 5; PFR File, Tab 3 at 9-10. The hypothetical loss here outlined by the appellant is insufficient to establish a gross waste of funds. *See El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 6 (2015) (explaining that vague, conclusory, unsupported and pro forma allegations of wrongdoing are insufficient to establish jurisdiction in an IRA appeal), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016).

to policy disputes somehow transforms the individual disclosures into something protected under § 2302(b)(8)").[4]

*Alleged harassing and fraudulent calls.*

The appellant on review argues that he outlined the "who, what, when, where, and how" of the harassing and fraudulent calls sufficient to meet his jurisdictional burden. PFR File, Tab 3 at 17. The administrative judge held that the appellant failed to nonfrivolously allege that he reasonably believed the agency was behind the harassing calls. ID at 12. We agree.

The appellant asserts on review that the administrative judge erred in failing to acknowledge that he reported that the agency targeted him with harassing and fraudulent CRM inquiries. PFR File, Tab 3 at 16. The Board has held that a disclosure of wrongdoing committed by a non-Federal Government entity may be protected only when the Government's interests and good name are implicated in the alleged wrongdoing, and the employee shows that he reasonably believed that the information disclosed evidenced that wrongdoing. *Covington v. Department of the Interior*, 2023 MSPB 5, ¶ 16.[5] The appellant has not alleged that the Government's interests and good name were implicated by the harassing calls, and thus his alleged disclosures about the non-governmental calls are not protected.

The appellant re-alleges on review that the agency was colluding with the public in targeting him through "fake, fraudulent, and/or harassing, troll-like" CRM inquiries. PFR File, Tab 3 at 17-18; IAF, Tab 9 at 58. We agree with the administrative judge that the appellant failed to nonfrivolously allege that he had

---

[4] The Board may follow a nonprecedential decision of the U.S. Court of Appeals for the Federal Circuit when, as here, it finds its reasoning persuasive. *LeMaster v. Department of Veterans Affairs*, 123 M.S.P.R. 453, ¶ 11 n.5 (2016).

[5] Despite not having the benefit of the Board's decision in *Covington*, which was issued after the initial decision in this case, the administrative judge properly applied the same reasoning, relying on *Aviles v. Merit Systems Protection Board*, 799 F.3d 457, 463-67 (5th Cir. 2015). ID at 10-12; *see Covington*, 2023 MSPB 5, ¶ 19 (citing *Aviles* with approval).

a reasonable belief in such collusion. ID at 12. Vague, conclusory, and unsupported allegations of alleged wrongdoing do not meet the nonfrivolous pleading standard needed to establish the Board's jurisdiction over an IRA appeal. *El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 6 (2015), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016); *see Sobczak v. Environmental Protection Agency*, 64 M.S.P.R. 118, 122 (1994) (finding an appellant does not establish jurisdiction over a disclosure when his alleged reasonable belief in wrongdoing is based on unsupported speculation); 5 C.F.R. § 1201.4(s) (explaining that nonfrivolous allegations are assertions that are more than conclusory and are plausible on their face).

The appellant on review reasserts that "it was apparent that it was members of his department and the Agency" who coordinated the harassing calls. PFR File, Tab 3 at 17-18; IAF, Tab 9 at 58. He supports his conclusion with the allegation that the callers exhibited "remarkably similar" behaviors to agency employees in his department such as his first-level supervisor and the PUD Director. PFR File, Tab 3 at 17-18. According to the appellant, both the callers and the members of his agency exhibit "hostile, combative, and argumentative behaviors" indicative of "[n]arcissists." *Id.* In essence, the appellant is supporting his conclusory assertion of collusion with other conclusory statements characterizing the behavior of those agency employees that he believes are involved. He has provided no specific or detailed information suggesting that the calls originated from or were directed by members of his agency. Even accepting as true that the callers and his coworkers exhibited similar hostile and combative behaviors, the appellant has failed to allege sufficient facts to reach the conclusion that the agency colluded with the callers. *See Hessami*, 979 F.3d 1362, 1368.

The appellant also appears to allege that, to the extent the agency did not initiate the harassing CRM inquiries, he disclosed that the agency engaged in similar harassment at staff meetings. PFR File, Tab 3 at 18-19; IAF, Tab 9 at 18,

Tab 11 at 104-05. Although the administrative judge did not address this purported disclosure, we discern no reversible error.

On review, the appellant refers to an email he sent to his first-level supervisor, contained in the record below, asserting that the staff meetings were "generally unpleasant, distasteful and mostly a huge waste of time." IAF, Tab 11 at 104; PFR File, Tab 3 at 18-19. For the reasons stated above, this disclosure does not rise to the level of a matter a reasonable person would believe evidences wrongdoing covered by the WPEA. Accordingly, we decline to disturb the initial decision on this basis. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

The administrative judge properly found the appellant nonfrivolously alleged he engaged in protected activities.

The administrative judge found that the appellant nonfrivolously alleged that his complaints to OIG and to OSC were protected activities. ID at 12-13; IAF, Tab 23 at 57-58; 5 U.S.C. § 2302(b)(9)(C). He found that the appellant's EEO complaint, however, was not a protected activity. ID at 12-13; IAF, Tab 21 at 148; *Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1329 (Fed. Cir. 2020) (explaining that under the WPEA, the Board does not have jurisdiction over an employee's claim that she was retaliated against for filing an EEO complaint that did not seek to remedy whistleblower reprisal). The parties do not dispute these findings on review, and we decline to disturb them.

The administrative judge correctly held that the appellant failed to nonfrivolously allege that his protected activities contributed to the alleged personnel actions.

The appellant on review challenges the administrative judge's finding that he failed to nonfrivolously allege that anyone responsible for his personnel actions knew about his OIG or OSC activities. PFR File, Tab 3 at 19; ID at 13. We agree with the administrative judge.

In addition to nonfrivolously alleging that he engaged in a protected activity, an appellant must nonfrivolously allege that the activity was a contributing factor in the agency's decision to take a personnel action. *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 7 (2014). An employee may establish, for jurisdictional purposes that a protected activity was a contributing factor through circumstantial evidence, such as the acting official's knowledge of the protected activity and the timing of the personnel actions. *Id.* Thus, an appellant's nonfrivolous allegation that the official taking the personnel action knew of the protected activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the activity was a contributing factor in the personnel action is sufficient to meet the knowledge/timing test and satisfy the appellant's burden to make a nonfrivolous allegation of a contributing factor. *Id.* As we indicated above, in determining whether an appellant has nonfrivolously alleged contributing factor, we must accept the appellant's allegations as true. *Hessami*, 979 F.3d 1362, 1368-69. However, vague, conclusory, and unsupported allegations do not meet the nonfrivolous pleading standard needed to establish the Board's jurisdiction over an IRA appeal. *El*, 123 M.S.P.R. 76, ¶ 6; *see Hessami*, 979 F.3d 1362, at 1367 (citing with approval the Board's regulation at 5 C.F.R. § 1201.4(s), defining a nonfrivolous allegation as more than conclusory and plausible on its face).

At the outset, we note that the letter of reprimand received by the appellant pre-dates both his OIG and OSC complaints. IAF, Tab 10 at 420, Tab 21 at 2, 87, Tab 23 at 57. Accordingly, these protected activities could not have been contributing factors in his letter of reprimand. *See Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 27 (2011) (determining that disclosures which occurred after the agency took an alleged personnel action could not have been a contributing factor in the action), *aff'd per curiam*, 496 F. App'x 75 (Fed. Cir. 2013). Additionally, the proposal to suspend the appellant for 14 days pre-dates his OSC complaint, and thus his OSC complaint similarly could not have

been a contributing factor in that proposal. IAF, Tab 9 at 41, Tab 21 at 2, 87. However, the agency issued the proposed suspension approximately 14 months after the appellant filed his OIG complaint and issued its decision on his 14-day suspension after the appellant filed both the OIG and OSC complaints. IAF, Tab 9 at 32, 41, Tab 21 at 2, 87, Tab 23 at 57. Because the appellant's protected activity occurred less than 2 years prior to the agency's decision on his suspension, we find that the appellant sufficiently established the timing prong of the knowledge/timing test as to this personnel action.[6] *See Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (observing that the Board has held that a personnel action taken within approximately 1 to 2 years of the appellant's disclosures satisfies the knowledge/timing test). As set forth below, however, we agree with the administrative judge that the appellant has failed to nonfrivolously allege knowledge.

The appellant on review alleges that the physical proximity between the OIG office and the individuals responsible for his personnel actions, in addition to "formal and back channel communications" between agency departments demonstrates knowledge. PFR File, Tab 3 at 19. He further argues that, given his computer is monitored by the agency and that "no privacy exists within the government system," the agency must have known of his protected activity. *Id.* He alleges that his "hyper vigilant supervisors" were already searching for excuses to retaliate against him, suggesting they were constantly monitoring his computer traffic. *Id.* at 19-20.

First, we find the suggestion that the appellant's "hyper vigilant supervisors" or other agency personnel were constantly monitoring his computer traffic is conclusory and implausible. *See Hessami*, 979 F.3d 1362, 1367;

---

[6] We recognize that the appellant did not satisfy the knowledge/timing test as to his proposed 14-day suspension and his OSC complaint. IAF, Tab 9 at 41, Tab 21 at 2, 87. Nonetheless, in order to simplify our analysis here, and because it does not affect the outcome, we treat the proposal and decision letters as the same personnel action. *See* 5 U.S.C. § 2302(b)(9) (stating that an employee is prohibited from taking, or threatening to take, a personnel action because of a protected activity)

5 C.F.R. § 1201.4(s). Regarding the alleged "formal and back channel communications," the appellant has provided no facts that, if true, would establish that such communication channels exist or that the officials who proposed and decided his 14-day suspension gained knowledge of his protected activities through such channels. *Kerrigan v. Merit Systems Protection Board*, 833 F.3d 1349, 1352, 1354-55 (Fed. Cir. 2016) (concluding that a petitioner failed to make a nonfrivolous allegation that the individuals who took the alleged personnel actions against him had knowledge of his disclosure based on "the generalized assertion that *someone* within the agency without any accompanying allegations as to the size, composition, or structure of that agency" was aware of the disclosure (emphasis in original)). Similarly, his assertion that the agency's OIG and the individuals responsible for his personnel actions shared the same office, "limited to just a few contiguous floors in the same building" is lacking sufficient facts to assume knowledge. PFR File, Tab 3 at 19. The appellant has not specifically alleged that knowledge passed to the proposing and deciding officials as a result of this proximity and, if so, how. *See Kerrigan*, 833 F.3d 1349, 1355 (declining to infer that acting officials were aware of a petitioner's disclosure based on "closeness in timing" between his disclosure and the alleged personnel actions); *Johnston v. Merit Systems Protection Board*, 518 F.3d 905, 912 & n.3 (Fed. Cir. 2008) (finding an appellant nonfrivolously alleged knowledge when she submitted an affidavit stating that she informed her supervisor that she was going to voice her concerns to the OIG shortly before receiving personnel actions). As such, his suggestions and assumptions, without more, are insufficient to meet the nonfrivolous pleading standard. *See El*, 123 M.S.P.R. 76, ¶ 6.

The Board has held that, if an appellant fails to satisfy the knowledge/timing test, it shall consider other evidence, such as the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the individuals taking the personnel

action, and whether these individuals had a desire or motive to retaliate against the appellant. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012). The administrative judge provided the appellant with notice of this alternative method of proving contributing factor but did not conduct a corresponding analysis. IAF, Tab 3 at 4-5; ID at 12-13. Thus, we modify the initial decision to supplement the administrative judge's analysis of the contributing factor element.

Here, we have agreed with the administrative judge's determination that the appellant has failed to nonfrivolously allege that his first-level supervisor and the PUD Director, who proposed and issued his 14-day suspension, knew of his protected activities. ID at 12-13. Further, the appellant has not alleged that these individuals were influenced by others with such knowledge. PFR File, Tab 3 at 19-20; *see Dorney*, 117 M.S.P.R. 480, ¶ 11 (explaining that an appellant can show that a disclosure was a contributing factor in a personnel action by proving that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action). Even assuming the OSC and OIG complaints were directed at the individuals responsible for his suspension, and that the agency's reasons for suspending the appellant were not strong, we conclude that the appellant has failed to nonfrivolously allege contributing factor under the *Dorney* analysis. A protected disclosure is a contributing factor if it affects an agency's decision to threaten, propose, take, or fail to take a personnel action. *Dorney*, 117 M.S.P.R. 480, ¶ 14. Because the appellant has failed to nonfrivolously allege that the proposing and deciding officials knew of, or were influenced by someone who knew of, the appellant's disclosures, he has failed to allege a set of facts that, if true, would prove that his complaints affected his 14-day suspension.

The appellant's remaining arguments on review are unpersuasive.

The appellant argues on review that his disclosures are protected even if they were made in the normal course of his duties. PFR File, Tab 3 at 13. The administrative judge briefly addressed this contention, finding that it did not

affect the outcome of the appeal. ID at 10. The Board has found that disclosures made in the normal course of one's job duties are not excluded from the definition of a protected disclosure. *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 14 (2016) (citing 5 U.S.C. § 2302(f)(2)). However, as set forth above, because we find that the appellant has failed to nonfrivolously allege that he made a protected disclosure, this analysis has no bearing on the outcome of this case.

The appellant further argues that the initial decision was issued before he could reply to the agency's response to the administrative judge's jurisdictional order. PFR File, Tab 3 at 5-6. Per the administrative judge's order, the record on the issue of jurisdiction closed on the date the agency's response to the appellant's jurisdictional statement was due. IAF, Tab 3 at 8. However, the administrative judge further stated that the appellant would have an opportunity to respond to any new evidence or argument submitted by the agency. *Id.* We, therefore, find that the administrative judge erred in precipitately issuing the initial decision 2 days after the agency submitted its jurisdictional response, effectively denying the appellant an opportunity to reply. IAF, Tab 30; ID at 1; *see Borowski v. Department of Agriculture*, 46 M.S.P.R. 564, 566-68 (1991) (determining that an administrative judge erred in closing the record on the same day that the appellant presumably received the agency's close-of-record submission, which included new evidence on which the administrative judge relied in issuing the initial decision). However, this error was harmless. *See Panter*, 22 M.S.P.R. at 282. The appellant now has had the opportunity to address the agency's new evidence and argument through his petition for review, and we have addressed those arguments in this Order. Thus, we find that the appellant was not prejudiced by receiving the agency's pleading on the date the record closed, 2 days prior to the issuance of the initial decision. *Rittgers v. Department of the Army*, 123 M.S.P.R. 31, ¶ 6 (2015).

In accordance with the appellant's ability to file evidence and argument in rebuttal to the agency's submission just before the record closed, we have considered the appellant's new documents, submitted for the first time on review. PFR File, Tab 3 at 22-37. We find that this new evidence and argument does not alter our conclusion. The documents include an email thread in response to the appellant's adverse action, wherein the appellant sought to effectively engage in discovery of documents relevant to his claim regarding the harassing and fraudulent calls. *Id.* at 22-28. These requests predate his Board appeal, and as discussed above, an appellant is nonetheless not entitled to discovery in an IRA appeal prior to establishing a nonfrivolous allegation of jurisdiction. *Sobczak*, 64 M.S.P.R. at 122.

The remaining document appears to be a checklist that the appellant purports relates to the administration of purchase contracts. PFR File, Tab 3 at 6, 29-37. Even assuming the appellant previously exhausted this disclosure with OSC, he has failed to nonfrivolously allege that the checklist evidenced wrongdoing under the WPEA. On the checklist, the appellant provided comments that a contract between the agency and a contractor was "unclear, vague, ambiguous, and confusing to the point of being misleading." PFR File, Tab 3 at 32-33. He further provided examples of language he suggested the agency modify. *Id.* at 32, 35-36. The disclosure does not evidence that the appellant reasonably believed, or even believed at all, that the contract evidenced gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8).

Accordingly, we affirm the initial decision, as modified above.

## NOTICE OF APPEAL RIGHTS[7]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[8]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:          _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.